This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------

No. 137
The People &c.,
          Respondent,
        v.
Dupree Harris,
          Appellant.


          Mark W. Vorkink, for appellant.
          Morgan J. Dennehy, for respondent.


PIGOTT, J.:

          The order of the Appellate Division should be affirmed.

          This case involves the interplay between two murders

and three criminal trials; the third trial is the subject of this

appeal.

          In September 2001, defendant's half-brother, Wesley

- 1 -

Sykes, fatally shot Dennis Brown. There were numerous witnesses to the crime, including three teenaged girls. Each girl gave a statement to the police identifying Sykes as the shooter.

While Sykes was awaiting trial, defendant began cultivating a relationship with each girl. Eventually, the girls agreed to go with defendant to Sykes's attorney's office and recant their prior identifications. Afterwards, defendant gave each of them money. It is these acts that led to defendant being charged with three counts each of witness tampering (Penal Law § 215.11 [2]) and bribery (Penal Law § 215.00).

As the trial of Sykes for the murder of Brown was about to begin, another eyewitness to the Brown shooting, Bobby Gibson, was shot and killed outside the apartment of one of the three girls. The shooting was so close, she heard the shots and saw Gibson's body outside her window. Fearing a similar fate, the girls revealed to police that they had taken money from defendant who had asked them to recant their identifications and not testify against Sykes. The girls were then placed in protective custody. They all testified at the Sykes trial and a jury ultimately convicted Sykes of Brown's murder.

A man named Travis Ragsdale later confessed to the murder of Gibson. He claimed the murder resulted from an alcohol-fueled dispute, and denied that the incident was related to the Brown murder. Ragsdale was ultimately convicted of murder in the second degree for the Gibson killing.

Prior to defendant's bribery and witness tampering trial, defense counsel moved to preclude evidence of the murder of the witness Gibson, asserting that it was entirely irrelevant to the charges in this case because defendant did not even know the man who shot and killed Gibson.  He argued that the admission of the evidence would be prejudicial and make it impossible for defendant to have a fair trial.  The prosecutor responded that the two cases were interwined; that Gibson was killed on the eve of Sykes's trial, and the three eyewitnesses at issue in defendant's trial had come forward because of Gibson's murder. The prosecutor also explained that all three girls had been relocated in response to Gibson's death and their bribery allegations against defendant.

The trial court ruled that evidence of Gibson's murder was necessary for the jury to consider the truthfulness and reliability of the three girls.  During voir dire, the court instructed the venire that defendant was not involved in that murder; and at the start of trial, reminded the prosecutor not to "belabor" Gibson's murder, emphasizing that he was prohibited from bringing in any evidence suggesting that defendant was connected to Gibson's death.  The defense introduced a video statement of Ragsdale wherein he stated that he shot Gibson out of anger and not because he was a witness to the Brown shooting.

In its charge to the jury during the trial, the court gave the following limiting instruction with respect to the

Gibson murder:

> "Defendant has not been charged with causing the death of the witness Bobby Gibson. The People have introduced evidence regarding Gibson's death for the purpose of explaining the state of mind of the three [teenage witnesses]. . . , and to provide the background for their participation in the witness protection program of the District Attorney's office.
>
> The defense has introduced the video statements of Travis Ragsdale who has been convicted of the murder of Bobby Gibson for the truth of that statement, and you will evaluate its credibility as you will evaluate the credibility of all witnesses and determine what witnesses you will give such weight".

The jury acquitted defendant of all three tampering counts, but convicted him of the bribery counts.

Defendant appealed arguing, as relevant here, that he was deprived of a fair trial because the court allowed the People to elicit evidence of the Gibson murder. He asserted that this evidence was not probative and was extremely prejudicial. Defendant also argued that he was denied due process when the prosecutor suggested repeatedly in summation that he was responsible for Gibson's death. The Appellate Division, with one Justice dissenting, affirmed (117 AD3d 847 [2d Dept 2013]).

Generally, "all relevant evidence is admissible unless its admission violates some exclusionary rule" (People v Scarola, 71 NY2d 769, 777 [1988]). "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact" (id. at 777). However, "[e]ven where relevant evidence is

admissible, it may still be excluded in the exercise of the trial court's discretion if its probative value is substantially outweighed by the potential for prejudice" (People v Mateo, 2 NY3d 383, 424-425 [2004]; see Scarola, 71 NY2d at 777).

Here, the evidence of Gibson's murder was relevant for several reasons. It showed the state of mind of the three girls and provided an explanation as to why they abandoned their recantations and told police about their deal with defendant. It also explained why the girls were placed in protective custody prior to the trial. Additionally, it allowed the jury to have all of the relevant facts before it to decide whether to credit defense counsel's arguments or the three girls' testimony concerning the charges against defendant.

While possible prejudice could arise from the testimony in that the jury might link defendant to the Gibson murder, that prejudice was minimized by the court's limiting instruction. The court, in its final charge, made clear that defendant had not been charged with causing the death of Gibson. In addition, the prosecutor had stated plainly in his opening statement and summation that there was no evidence that defendant was involved. Thus, we conclude that the court's decision to admit the evidence of Gibson's murder was not an abuse of discretion.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed. Opinion by Judge Pigott. Chief Judge Lippman and Judges Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided October 15, 2015