# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1249**

**KA 13-01609**

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                           MEMORANDUM AND ORDER

LAWRENCE P. FRUMUSA, ALSO KNOWN AS JOHN DOE,
DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF
COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (ROBERT J. SHOEMAKER OF
COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Victoria M.
Argento, J.), rendered September 30, 2011. The judgment convicted
defendant, upon a jury verdict, of grand larceny in the second degree.

It is hereby ORDERED that the judgment so appealed from is
affirmed.

Memorandum: Defendant appeals from a judgment convicting him
upon a jury verdict of grand larceny in the second degree (Penal Law §
155.40 [1]). Defendant contends that he was deprived of a fair trial
because County Court improperly admitted as *Molineux* evidence a civil
contempt order (hereafter, contempt order) finding that certain
companies owned solely by defendant (hereafter, defendant's
businesses) had failed to obey the terms of an earlier order. We
reject that contention. The earlier order directed defendant's
businesses to turn over all monies they had received as a result of
defendant diverting credit card proceeds from Webster Hospitality
Development LLC (WHD), a company in which defendant held majority
ownership and which was in receivership, to undisclosed bank accounts
maintained for defendant's businesses. Contrary to defendant's
contention, the contempt order does not constitute a finding that
defendant stole the money; rather, it demonstrates that defendant's
businesses failed to abide by the earlier order to return money to WHD
and to provide certain documentation to the receiver. We thus
conclude that the contempt order was properly admitted as relevant
evidence of defendant's intent to deprive WHD of the money by
"withhold[ing] it or caus[ing] it to be withheld from [WHD]
permanently" (§ 155.00 [3]; *see People v Molineux*, 168 NY 264, 293).
Moreover, we note that "[l]arcenous intent . . . 'is rarely
susceptible of proof by direct evidence, and must usually be inferred
from the circumstances surrounding the defendant's actions' " (*People*

*v Brown*, 107 AD3d 1145, 1146, *lv denied* 22 NY3d 1039).  Here, the contempt order had significant probative value inasmuch as it showed that defendant's conduct did not merely constitute poor financial management but, rather, that defendant, through his businesses, intended to deprive WHD of the diverted money permanently.  The court therefore properly concluded that "the probative value of the evidence outweighed its prejudicial effect" (*People v Smith*, 129 AD3d 1549, 1549, *lv denied* 26 NY3d 971).

We reject defendant's contention that the court improperly limited his cross-examination of a witness with the minority ownership of WHD.  "It is well settled that [t]he scope of cross-examination is within the sound discretion of the trial court" (*People v Bryant*, 73 AD3d 1442, 1443 [internal quotation marks omitted], *lv denied* 15 NY3d 850).  Here, "the record establishes that defendant was given wide latitude in cross-examining the witness in question, and the court limited the cross-examination in merely a single instance that could not have affected the outcome of the trial" (*id.*).  Contrary to defendant's further contention, we conclude that he received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

Finally, we reject defendant's contention that the court abused its discretion in denying his request for an adjournment of sentencing to permit his newly-retained counsel additional time to prepare.  "It is well established that '[t]he granting of an adjournment for any purpose is a matter resting within the sound discretion of the trial court' " (*People v LaCroce*, 83 AD3d 1388, 1388, *lv denied* 17 NY3d 807, quoting *People v Diggins*, 11 NY3d 518, 524), and " '[t]he court's exercise of discretion in denying a request for an adjournment will not be overturned absent a showing of prejudice' " (*People v Aikey*, 94 AD3d 1485, 1486, *lv denied* 19 NY3d 956).  Defendant made no such showing here.

All concur except CENTRA and LINDLEY, JJ., who dissent and vote to reverse in accordance with the following memorandum:  We respectfully dissent and conclude that County Court erred in admitting in evidence a contempt order issued by a Supreme Court Justice.  We would therefore reverse the judgment of conviction and grant a new trial.  Defendant was the majority owner of Webster Hospitality Development LLC (WHD), a company that developed and operated a hotel.  The minority owner of WHD filed a civil suit against defendant in Supreme Court, resulting in the court appointing a temporary receiver to manage WHD.  Defendant was charged with grand larceny in the second degree (Penal Law § 155.40 [1]) based on the allegation that he stole in excess of $50,000 from WHD between December 1, 2008 and June 15, 2009, while it was in receivership.  Specifically, the People alleged that defendant directed American Express credit card proceeds into a bank account that defendant had opened for WHD at PNC Bank, an account of which the receiver had no knowledge.  Once the funds were in that account, defendant transferred the funds to the accounts of other companies owned solely by defendant (hereafter, defendant's businesses), also at PNC Bank.

By order issued on July 27, 2009, which was after the time period set forth in the indictment herein, Supreme Court ordered defendant's businesses to turn over all monies deposited into WHD's account at PNC Bank.  By notice of motion dated August 20, 2009, WHD moved for an order of contempt for the failure of defendant's businesses to comply with that order.  Defendant's businesses did not submit any papers in opposition to the motion, and did not appear on the return date thereof.  Supreme Court granted the motion and issued a final order adjudging defendant's businesses in contempt (hereafter, contempt order).  The contempt order provided that defendant's businesses "are adjudged to be in contempt of Court in having willfully and deliberately failed to obey the terms of the Order in that they have *converted* $249,196.28 of WHD's monies and refused to comply with the express directions in the Order to pay over to WHD all monies received by each of them, or paid on their behalf, from a WHD account . . . [;] and it is further determined that [the conduct of defendant's businesses] *was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of WHD*" (emphasis added).

The People's *Molineux* notice sought to introduce in evidence the contempt order, arguing that it demonstrated defendant's intent to steal.  The People argued that they were not introducing the order "to suggest that just because a judge found . . . defendant's [businesses] . . . in contempt of Court, that they should convict [defendant]." Over defendant's objection, the court granted the People's application.  The contempt order was admitted in evidence at trial, and witnesses testified that defendant and his businesses failed to comply with the contempt order and had not turned over any funds that were transferred into the PNC Bank accounts.  The court gave the jury no limiting instruction with respect to that evidence.

It is well settled that "evidence of a defendant's prior bad acts may be admitted to prove the crime charged when the evidence tends to establish," inter alia, intent (*People v Denson*, 26 NY3d 179, ___; *see People v Molineux*, 168 NY 264, 293).  We conclude that the contempt order did not constitute *Molineux* evidence.  The contempt order and related testimony involved defendant's conduct, through his businesses, that occurred after the crime he was charged with.  In certain circumstances, bad acts or crimes that are committed after the crime charged are admissible (*see People v Ingram*, 71 NY2d 474, 479-480).  The evidence here, however, was not "[p]roof of defendant's conviction of a subsequent *unrelated* crime" (*People v Holmes*, 112 AD2d 739, 739, *lv denied* 66 NY2d 920 [emphasis added]; *see Ingram*, 71 NY2d at 479-480).  Rather, it was evidence involving conduct of defendant, through his businesses, that was related to the *same* crime with which defendant was charged.  Indeed, the contempt order arose from an order directing defendant's businesses to turn over the very funds that the People accused defendant of stealing.  Moreover, the contempt order was issued in an uncontested civil proceeding, where the lesser burden of proof of clear and convincing evidence applied (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29).

In any event, even if the contempt order constituted *Molineux*

evidence, we conclude that the court abused its discretion in admitting it in evidence because its probative value did not outweigh its prejudicial effect (*see People v Drake*, 94 AD3d 1506, 1508, *lv denied* 20 NY3d 1010).  Inasmuch as the contempt order stated that defendant, through his businesses, "converted" the funds at issue to the detriment of the rights and remedies of WHD, the jury had before it a document that essentially constituted, in the context of the other evidence presented at trial, a judicial finding of defendant's larcenous intent.  The prejudicial effect on the charge herein against defendant was nothing other than obvious and extreme.  In addition, as noted above, the court did not give any limiting instruction to the jury to minimize any prejudicial effect (*cf. People v Graham*, 117 AD3d 1584, 1584-1585, *lv denied* 23 NY3d 1037).

Moreover, the prosecutor concluded his summation by drawing the jury's attention to the contempt order, and the prosecutor urged the jurors to convict inasmuch as a Supreme Court Justice "had tried [to hold him responsible] by trying to fine him and that didn't work."  He further stated that Supreme Court had "issued order after order after order trying to hold him in contempt.  Now you can issue that decision.  You can hold him responsible for this, and you can find him guilty of Grand Larceny in the Second Degree."  Thus, the prosecutor sought to have the jury use the contempt order for the very purpose which he had earlier said was not the purpose of the *Molineux* application, i.e., "to suggest that just because a judge found . . . defendant's [businesses] . . . in contempt of Court, that they should convict him."  In our view, defendant was denied a fair trial by cumulative effect of the admission in evidence of the contempt order, the testimony regarding that contempt order, and the prosecutor's references to the contempt order on summation.

Entered:  December 31, 2015                      Frances E. Cafarell
                                                  Clerk of the Court