This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 175
The People &c.,
            Respondent,
        v.
Timothy Brewer,
            Appellant.

Brian Shiffrin, for appellant.
Robert J. Shoemaker, for respondent.

ABDUS-SALAAM, J.:

        In this case involving the defendant's sexual abuse of two minor girls, we must decide whether the trial court abused its discretion as a matter of law by allowing the People to elicit evidence of the distinctive manner in which he engaged in sexual acts with consenting adult women. We conclude that the

- 1 -

trial court did not err in admitting this evidence, which corroborated the testimony of the two minor victims, because it was relevant and highly probative, and its probative value was not outweighed by the potential for prejudice.

I.

*Factual Background*

The two victims in this case are sisters. When MD was nine and OD was seven, they lived in Rochester with their mother and defendant. Though defendant, who was their mother's boyfriend, was not their biological father, they called him "dad." At the time they lived there, defendant, their mother, and numerous other adults used the house to use and sell drugs and engage in sexual acts. Most often, these activities took place in a closet defendant called the "bat cave."

MD and OD each described being sexually abused by defendant, and the particular method he used: he pulled them into a closet or back bedroom and forced them to perform oral sex on him, while he smoked crack with his shirt pulled over his head. After one of these incidents, MD left defendant and immediately disclosed to her mother what had happened. The mother gathered up MD, OD, and the rest of her children and moved out of the house.

At issue here is the evidence the People sought to introduce on their direct case pursuant to what they delineated as a pretrial Molineux application. The prosecutor wanted to elicit that the abuse of the girls had started before they moved

to Rochester; that defendant frequently beat them with a belt; that defendant rented out the "bat cave" to others in the neighborhood to use as a space for drug use and sex; that when the police arrested defendant in the house, pursuant to a search warrant, they recovered crack cocaine; and, most relevant here, that defendant was a habitual crack user and engaged in oral sex with the girls' mother and other consenting adult women in the exact same manner as he had forced the girls to: in a closet, with his shirt pulled over his head, while smoking crack. The People planned to introduce this evidence about defendant's sexual habit through direct testimony from their mother. In their written application, the People argued that the proffered evidence would aid the jury in understanding the unique dynamics of the particular household and family, and in making credibility determinations.

The trial court heard argument on the applications and refused to allow evidence of the beatings with the belt, the renting out of the closet, and the recovery of drugs during the execution of the search warrant. With respect to defendant's consensual oral sex with adult women in the bat cave while smoking crack, defense counsel argued that the drug use and the sexual acts were "clearly prejudicial and not probative enough for [the] Court to exercise its discretion and allow that testimony." The People argued, in addition to the reasons stated in their written application, that the evidence was relevant

because it demonstrated a pattern of behavior. The court ruled
that the People could elicit testimony from the mother about her
own observations and experiences with defendant, but limited the
testimony about other adult women to those for which she was able
to provide names and dates, and had personally observed engaging
in sexual acts with defendant. After hearing testimony from the
mother, both girls, and defendant himself, the jury found
defendant guilty of all charges. On appeal, defendant's judgment
was affirmed by the Appellate Division (129 AD3d 1619 [4th Dept
2015]). A Judge of this Court granted defendant leave to appeal
(26 NY3d 965 [2015]), and we now affirm.

## II.

### *The Disputed Evidence*

The Appellate Division correctly concluded that
evidence of defendant's drug use was an uncharged crime or prior
bad act, and that it could be properly admitted as Molineux
evidence (see People v Molineux, 168 NY 264 [1901]) because it
was not proffered to show defendant's propensity toward crime,
but to corroborate details of the victims' testimony (129 AD3d at
1620). We agree that evidence of defendant's use of crack cocaine
while engaging in sexual acts was not overly prejudicial in the
context of this trial. Further, the trial court prohibited the
People from introducing evidence of the crack cocaine recovered
from defendant during the execution of the search warrant,
thereby exercising its discretion in permitting evidence of drug

use only as it pertained to the sex acts described by the victims.

We further agree with the Appellate Division's conclusion that evidence of defendant's prior sexual encounters with the girls' mother and another consenting adult woman was not Molineux evidence, "because it was neither a crime nor a prior bad act for him to receive consensual oral sex from an adult in a closet with his T-shirt pulled over his head" (129 AD3d at 1620). Molineux analysis is limited to the introduction of a prior uncharged crime or a prior bad act. It should not be used to evaluate a prior consensual sexual act between adults.[1]

In the context of this case, we also note that evidence of defendant's prior sexual acts with adult women is not "propensity" evidence in its traditional sense. When we limit Molineux or other propensity evidence, we do so for policy reasons, due to fear of the jury's "human tendency" to more readily "believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar

---

[1]That the People classified it as Molineux evidence, and the trial court considered it on that basis, does not prevent us from concluding it was not. Whether it was given that particular title, the arguments on both sides would remain the same. And though we hold that this was not properly classified as Molineux evidence, we note that the trial court did not abuse its discretion admitting it for the stated non-propensity purposes provided by the People. Nor do we intend by this decision to discourage the People from bringing a challenging or problematic evidentiary issue to the attention of the court and defendant before trial.

crime" (People v Ventimiglia, 52 NY2d 350, 359 [1981], citing Molineux, 168 NY at 313). But here, that defendant had engaged in oral sex with consenting adult women, while in a closet smoking crack with his shirt pulled over his head, showed no propensity to commit the crimes for which he was on trial. That this evidence corroborated the girls' accounts does not render it propensity evidence, because corroboration and propensity are distinct concepts. Because "there [was] a proper nonpropensity purpose, the decision whether to admit evidence of defendant's prior . . . acts rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (People v Frankline, 27 NY3d 1113, 1115 [2016], quoting People v Dorm, 12 NY3d 16, 19 [2009]).

The trial court here properly considered and admitted the evidence using the appropriate factors: its relevance, probative value to the People's case, and potential prejudice to defendant (see generally People v Harris, 26 NY3d 1, 5 [2015]). Here, there is no real dispute that the evidence was relevant and probative, as it tended to support the girls' account of their abuse by corroborating the peculiar manner in which defendant engaged in oral sex. Notably, as the Appellate Division pointed out, the People established that the girls had never witnessed defendant's sexual encounters with their mother or other women, and as the prosecutor argued in her summation, the girls were describing their own experiences.

Finally, the trial court did not abuse its discretion in concluding that the probative value of the evidence was not outweighed by potential prejudice. Plainly, almost all relevant, probative evidence the People seek to admit in a trial against a defendant will be, in a sense, prejudicial. The People generally wish to admit evidence supporting the theory that a defendant is guilty of the crime for which he is charged. Evidence which helps establish a defendant's guilt always can be considered evidence that "prejudices" him or her. But the probative value of a piece of evidence is not automatically outweighed by prejudice merely because the evidence is compelling. Here, "[t]he point is that the damage resulted from something other than its tendency to prove propensity. That suggests that the evidence must have been relevant to something else, as indeed it was. . . . If this evidence was damaging, it was because it had the intended effect -- it undermined the defendant's theory" (People v Hudy, 73 NY2d 40, 72 [1988] [Wachtler, Ch.J., dissenting], abrogated on other grounds by Carnell v Texas, 529 US 513 [2000]; see also People v Walker, 83 NY2d 455, 463 [1994] [the People's use of alias evidence while cross examining defendant was within the sound discretion of the trial court, and "there is no undue prejudice; there is only the expected -- and, indeed, intended -- negative impact that naturally flows from evidence admitted for the purpose of impeachment"] [emphasis in original]).

Here, the evidence of defendant's prior sexual

encounters with adult women while using drugs was prejudicial to him, as it strengthened the People's case by making the victims' accounts ring true. However, on this record, taking into account the full extent of the evidence the People sought to introduce, and the trial court's limitation and in some instances, outright preclusion thereof, we cannot say that the court abused its discretion in admitting this particular evidence. A trial court enjoys broad discretion in deciding whether to admit evidence, and this Court will disturb the decision "only where the trial court has either abused its discretion or exercised none at all" (Walker, 83 NY2d at 459, citing People v Williams, 56 NY2d 236, 238 [1982]). Neither concern is implicated here.

### III.

*Prompt Outcry and Excited Utterance*

Finally, defendant argues that the trial court erred in allowing the mother to testify about MD disclosing the abuse to her. Generally, the "prompt outcry exception" to the hearsay rule is limited to testimony that a timely complaint was made, and "does not allow the further testimony concerning details of the incident" (People v Rice, 75 NY2d 929, 932 [1990]). But the People argued that the disclosure was also an excited utterance because it came immediately on the heels of an abusive encounter, while MD was crying and sad, "made while the victim was under the continuing influence of the stress and excitement generated by the initial event" (People v Medina, 53 AD3d 1046, 1047 [4th Dept

2008], <u>lv</u> <u>denied</u> 11 NY3d 856 [2008]). The court allowed the testimony as both a prompt outcry and excited utterance.[2] Here, this brief account of what MD told her mother can be viewed as both a prompt outcry and an excited utterance, and thus the admission was proper.

       Accordingly, the Appellate Division order should be affirmed.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Rivera, Stein, Fahey and Garcia concur.

Decided November 17, 2016

---

[2]The trial court indicated it would allow the testimony as a prompt outcry and a "spontaneous utterance." Given the arguments made by the People and the comments of the court, it is clear that the court used the term "spontaneous utterance" interchangeably with "excited utterance."