This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 65
The People &c.,
            Respondent,
        v.
Lawrence P. Frumusa, &c.,
            Appellant.


            Drew R. DuBrin, for appellant.
            Kelly C. Wolford, for respondent.


FAHEY, J.:

        For over one hundred years, this Court has applied and refined its holding in People v Molineux (168 NY 264 [1901]). Here, we are presented with a more fundamental question concerning how to identify such propensity evidence in the first instance. We are asked to determine whether the trial court

- 1 -

abused its discretion as a matter of law by admitting into evidence a contempt order issued in a civil action involving the same funds defendant was criminally charged with stealing. We conclude that the contempt order did not constitute Molineux evidence. We further conclude that the trial court did not abuse its discretion as a matter of law at the pretrial hearing in concluding that the evidence was admissible because it was relevant to defendant's larcenous intent and its probative value was not substantially outweighed by the danger of undue prejudice to defendant.

I.

In 2006, defendant entered into a joint business venture with Marianela Hernandez to construct and operate a hotel. Defendant and Hernandez formed Webster Hospitality Development LLC (WHD) for that purpose. Hernandez initially invested $1 million in exchange for a 25% ownership share in WHD. Defendant had a 75% ownership share and acted as WHD's managing member, with authority to obtain financing, manage the hotel's accounting, and pay creditors.

The hotel opened in 2007, and despite a steady flow of customers, the hotel quickly encountered financial problems. Hernandez became suspicious of defendant's business practices after she learned of liens placed on the property by unpaid construction contractors. Sometime in 2008, Hernandez discovered that some of the hotel's proceeds were being transferred into

accounts defendant held for his other separate businesses.  She consulted attorneys and commenced a civil action against defendant in New York Supreme Court in early 2009.  Defendant was indicted on the criminal charge of grand larceny in the second degree in September 2010.  The People alleged that defendant stole approximately $300,000 from WHD between December 2008 and June 2009 by diverting credit card proceeds from the hotel to accounts that he held for his other businesses.

Several orders entered by Supreme Court in the civil action were admitted into evidence during the criminal trial without objection by defendant.  In February 2009, Supreme Court appointed a receiver to take control of WHD and prohibited both defendant and Hernandez from transferring, encumbering, or otherwise disposing of WHD's assets, and from taking any action whatsoever on behalf of WHD.  The receiver, Timothy Foster, was authorized to oversee all WHD operations, hire a management company to continue operation of the hotel, and manage all bank accounts and accounting for WHD.  Defendant and Hernandez were ordered to pay over to Foster any WHD assets currently in their possession and were further enjoined from collecting any money on behalf of WHD.

In June 2009, Hernandez and Foster learned that defendant had opened bank accounts in the names of his other businesses at PNC Bank and had been transferring credit card proceeds from the hotel into those bank accounts.  Motion

practice in the civil action followed, and in October 2009, Supreme Court issued the contempt order at issue.

That contempt order held three of defendant's other businesses in contempt for failing to obey a July 2009 order of the court directing defendant's businesses to turn over all WHD funds deposited into the PNC accounts. The contempt order stated that defendant's businesses had "willfully and deliberately failed to obey the terms" of the earlier order "in that they have converted $249,196.28 of WHD's monies and refused to comply with the express directions in the [earlier order] to pay over to WHD all monies received by each of them." In addition, the contempt order stated that the conduct of defendant's businesses "was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of WHD." Defendant's businesses were allowed to purge themselves of the contempt by paying a fine and returning the funds to WHD. Hernandez and Foster testified at trial that neither defendant nor his businesses ever returned those funds to WHD.

Before defendant's criminal trial began, the People sought permission to introduce the contempt order as Molineux evidence. The People anticipated that defendant would contend at trial that he did not act with larcenous intent when he took the funds from WHD, and the People argued that because defendant was the majority owner of WHD, his intent could not be easily inferred from his actions. The People contended that the

contempt order was relevant to defendant's intent in that he failed to return to WHD the funds that his businesses were ordered to turn over. Defendant opposed the motion, arguing that the jury might afford undue weight to the contempt order and that the burden of proof was "completely different" in a civil case. For those reasons, defendant asserted that the prejudice to defendant would outweigh any probative value of the contempt order. The court granted the People's Molineux application.

During the criminal trial, defendant did not dispute that he transferred WHD funds to the PNC accounts in violation of court orders prohibiting him from doing so. He contended, however, that he did not act with larcenous intent because when he took the funds, he merely intended as the managing member of WHD to ensure the continued operation of the business and the payment of its creditors, and his actions were the result of his concerns regarding the competence of Foster as receiver.

The People presented evidence that defendant opened the accounts at PNC Bank before a receiver was appointed in the civil action, and defendant began transferring credit card proceeds to those accounts two days after Foster was first appointed receiver. Foster testified that defendant never informed him of the existence of those accounts, despite a lengthy meeting the two had in late February 2009. By March of 2009, the PNC accounts were accessible only by defendant. Furthermore, defendant gave an interview to a local business newspaper in

August 2009, in which he admitted that certain credit card proceeds paid to the hotel were being transferred to an account he referred to as "mine," and that Foster did not know about that account because he never asked about it.  According to the People's evidence, between January and June of 2009, defendant transferred approximately $299,500 of WHD's credit card revenue into the PNC accounts.  The jury found defendant guilty as charged.

On appeal, a divided Appellate Division affirmed the judgment.  The court held that the contempt order was properly admitted as relevant to defendant's intent and that the probative value of the order outweighed its potential prejudice (see People v Frumusa, 134 AD3d 1503, 1504 [4th Dept 2015]).  The two dissenting Justices concluded that the contempt order was not Molineux evidence, but even if it was, its probative value did not outweigh its prejudicial effect, inasmuch as the contempt order constituted "a judicial finding of defendant's larcenous intent" (id. at 1507 [Centra & Lindley, JJ., dissenting]).  One of the dissenting Justices granted defendant leave to appeal to this Court (27 NY3d 971 [2016]).  We now affirm.

II.

Initially, we conclude that the contempt order was not Molineux evidence.  "[T]he familiar Molineux rule states that evidence of a defendant's *uncharged crimes or prior misconduct* is not admissible if it cannot logically be connected to some

specific material issue in the case, and tends only to
demonstrate the defendant's propensity to commit the crime
charged" (People v Cass, 18 NY3d 553, 559 [2012] [emphasis
added]).  Molineux evidence is presumptively inadmissible unless
it is relevant to some material issue in the case and the trial
court determines in its discretion that the probative value of
the evidence outweighs the risk of undue prejudice to the
defendant (see id. at 560; People v Alvino, 71 NY2d 233, 242
[1987]).

The Molineux rule "'is based on policy and not on
logic'" (People v Arafet, 13 NY3d 460, 465 [2009], quoting People
v Allweiss, 48 NY2d 40, 46 [1979]).  "It may be logical to
conclude from a defendant's prior crimes that he is inclined to
act criminally, but such evidence 'is excluded for policy reasons
because it may induce the jury to base a finding of guilt on
collateral matters or to convict a defendant because of his
past'" (Arafet, 13 NY3d at 465, quoting Alvino, 71 NY2d at 241).

"Molineux analysis is limited to the introduction of a
prior uncharged crime or a prior bad act" (People v Brewer, 28
NY3d 271, 276 [2016]).  Although we have extended the Molineux
rule to allow for admissibility of subsequent crimes or bad acts
under certain circumstances (see generally People v Ingram, 71
NY2d 474, 480-481 [1988]), the common thread in all Molineux
cases is that the evidence sought to be admitted concerns a
*separate* crime or bad act committed by the defendant.  This

becomes clear when one considers the reason for the rule: "When we limit Molineux or other propensity evidence, we do so for policy reasons, due to fear of the jury's human tendency to more readily believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime" (Brewer, 28 NY3d at 276 [internal quotation marks omitted]).  In other words, the courts limit the admission of Molineux evidence because of the danger that the jury might conclude that if the defendant did it once, he or she likely did it again.

Where, as here, the evidence at issue is relevant to the very same crime for which the defendant is on trial, there is no danger that the jury will draw an improper inference of propensity because no separate crime or bad act committed by the defendant has been placed before the jury.  The People were not, for example, seeking to introduce evidence that defendant had previously embezzled money from a separate business several years before.  Rather, the contempt order stated that defendant's businesses had failed to return to WHD the very same funds that defendant was on trial for stealing from WHD.  It therefore would be impossible for the jury to conclude from the contempt order that defendant had a "propensity" to steal or otherwise commit crime.

"That the People classified it as Molineux evidence, and the trial court considered it on that basis, does not prevent

us from concluding it was not," because the parties' arguments below regarding the probative value of the contempt order and its prejudicial effect "would remain the same" (Brewer, 28 NY3d at 276 n 1). Nor do we seek "to discourage the People from bringing a challenging or problematic evidentiary issue to the attention of the court and defendant before trial" (id.).

                              III.

Under general evidentiary principles, "'all relevant evidence is admissible unless its admission violates some exclusionary rule'" (People v Harris, 26 NY3d 1, 5 [2015], quoting People v Scarola, 71 NY2d 769, 777 [1988]). Here, as explained, the contempt order is not Molineux evidence and therefore its admission does not violate that exclusionary rule.

We agree with the People that portions of the contempt order were relevant to defendant's intent in committing grand larceny in the second degree. The People were required to prove that defendant acted with intent to "deprive" WHD of its property (see Penal Law § 155.05 [1]).

> "To 'deprive' another of property means (a)
> to withhold it or cause it to be withheld
> from him permanently or for so extended a
> period or under such circumstances that the
> major portion of its economic value or
> benefit is lost to him, or (b) to dispose of
> the property in such manner or under such
> circumstances as to render it unlikely that
> an owner will recover such property" (Penal
> Law § 155.00 [3]).

The People were therefore required to prove that when defendant transferred the funds, he was without legal authority to do so,

and that he did so not to benefit WHD, as he claimed, but rather with the intent to deprive WHD of those funds permanently.

The Appellate Division correctly concluded that the contempt order was relevant to prove defendant's larcenous intent because "it showed that defendant's conduct did not merely constitute poor financial management but, rather, that defendant, through his businesses, intended to deprive WHD of the diverted money permanently" (Frumusa, 134 AD3d at 1504).  The fact that defendant's businesses failed to return the funds to WHD after they were ordered by Supreme Court to do so makes it less likely that defendant took the funds to benefit WHD, and more likely that he took them with the intent to permanently deprive WHD of the money.

Defendant contends that the contempt order did not affirmatively disprove his theory that he acted with the intent to assure the continued viability of the business.  That is true, but defendant's argument misapprehends the nature of relevant evidence.  "Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence" (Scarola, 71 NY2d at 777).  The fact that the contempt order, standing alone, would not prove defendant's larcenous intent beyond a reasonable doubt does not mean that it was irrelevant.  Again, the continued retention of WHD's funds by defendant's businesses, in defiance of a court

order to return those funds, is relevant to whether defendant took the money with intent to permanently deprive WHD because it makes it more likely that this was defendant's intent in committing the taking.

Defendant relatedly contends that his intent could not be inferred from the fact that he failed to return the money to WHD because other evidence presented at trial -- namely, his personal bankruptcy and the fact that his other businesses were suffering financially -- suggested that he was unable to return the funds at the time the contempt order was issued. That argument goes to the weight and not the admissibility of the contempt order. Defendant was free to argue during trial that the jury should draw a different inference from the contempt order, i.e., that his businesses were simply unable to comply when ordered to return the funds to WHD, than the inference of intent for which the People argued.

IV.

Relevant evidence "may still be excluded in the exercise of the trial court's discretion if its probative value is substantially outweighed by the potential for prejudice" (Harris, 26 NY3d at 5 [internal quotation marks omitted]; see Scarola, 71 NY2d at 777; People v Davis, 43 NY2d 17, 27 [1977], cert denied 435 US 998 [1978], cert denied sub nom. New York v James, 438 US 914 [1978]). We review the trial court's exercise of its discretion in this balancing analysis for an

abuse of discretion as a matter of law (see Brewer, 28 NY3d at
277).

> "Plainly, almost all relevant, probative
> evidence the People seek to admit in a trial
> against a defendant will be, in a sense,
> prejudicial. The People generally wish to
> admit evidence supporting the theory that a
> defendant is guilty of the crime for which he
> is charged. Evidence which helps establish a
> defendant's guilt always can be considered
> evidence that 'prejudices' him or her. But
> the probative value of a piece of evidence is
> not automatically outweighed by prejudice
> merely because the evidence is compelling"
> (Brewer, 28 NY3d at 277).

Rather, the court must weigh the probative value of the evidence
against the danger of *unfair* or *undue* prejudice to the defendant
(see Scarola, 71 NY2d at 777; Davis, 43 NY2d at 27).

It was not unduly prejudicial to defendant that the
contempt order stated that defendant's businesses had funds
belonging to WHD and that the businesses failed to return those
funds to WHD.  The contempt order was not entered against
defendant himself and, as noted, defendant conceded at trial that
he took the money from WHD and transferred it to accounts in the
names of his other businesses without legal authority to do so.
Furthermore, as explained above, it was relevant to defendant's
larcenous intent that his businesses failed to return the funds
to WHD after being ordered to do so.

Granted, the contempt order was not without the
potential to unduly prejudice defendant.  As defense counsel
noted in opposition to the People's Molineux application, there

are different burdens of proof in civil and criminal cases.  The
contempt order also stated that the actions of defendant's
businesses were "calculated to and actually did defeat, impair,
impede, and prejudice the rights and remedies of WHD."  The
dissenting Justices at the Appellate Division concluded that this
might be viewed by the jury as constituting a "judicial finding
of defendant's larcenous intent," and that a limiting instruction
should have been given to minimize any potential prejudice to
defendant (Frumusa, 134 AD3d at 1507 [Centra & Lindley, JJ.,
dissenting]).  Defendant never requested a limiting instruction,
however, and we therefore cannot address that issue.  We
reiterate, however, that a limiting instruction generally may be
used to minimize any potential undue prejudice from the admission
of evidence, even outside the Molineux context (see generally
Harris, 26 NY3d at 5).

Defendant further contends that certain remarks by the
prosecutor during summation were improper and contravened the
prosecutor's assertions to the court during the pretrial hearing
that the contempt order would be introduced to support intent
rather than to suggest that the jury should ratify the judge's
findings in the contempt order.  We cannot address that
contention, however, because defendant failed to object to those
remarks.  Instead, our review is limited to the court's ruling at
the time of the pretrial hearing regarding the admissibility of
the contempt order.

For the foregoing reasons, we cannot conclude on this record that the probative value of the contempt order was so substantially outweighed by the danger of undue prejudice to defendant that the trial court abused its discretion as a matter of law by admitting it into evidence.

Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Stein, Garcia and Wilson concur.

Decided June 8, 2017