People v Aycock (2025 NY Slip Op 03078)

People v Aycock

2025 NY Slip Op 03078

Decided on May 21, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 21, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
PAUL WOOTEN
BARRY E. WARHIT
DONNA-MARIE E. GOLIA, JJ.

2022-02095
 (Ind. No. 1981/19)

[*1]The People of the State of New York, respondent,
v
Thyron Aycock, appellant.

Patricia Pazner, New York, NY (Hannah Kon of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and William H. Branigan of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Cassandra M. Mullen, J.), rendered March 8, 2022, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Michael Aloise, J.), of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
ORDERED that the judgment is affirmed.
In or about October 2012, the defendant killed another man with a hammer. In the course of the police investigation into the homicide, the defendant made oral statements to law enforcement officials, after waiving his Miranda rights (see Miranda v Arizona, 384 US 436). In an omnibus motion, the defendant moved, inter alia, to suppress those statements. The Supreme Court denied that branch of the defendant's omnibus motion after a hearing. Following a jury trial, the defendant was convicted of murder in the second degree. The defendant appeals.
Contrary to the defendant's contention, the evidence at the suppression hearing established that his statements to law enforcement officials were made after he knowingly, voluntarily, and intelligently waived his Miranda rights (see id.; People v Dobbins, 123 AD3d 1140, 1140-1141). "A defendant who refuses to sign a written waiver of his [or her] rights, including a Miranda rights card, may nevertheless orally waive his [or her] rights" (People v Saunders, 71 AD3d 1058, 1059; see People v Fenelon, 148 AD3d 1051, 1051). Here, although the defendant did not sign his Miranda rights card, he orally agreed to waive his rights and willingly answered questions after declining to sign the card (see People v McManus, 219 AD3d 636, 636; People v Fenelon, 148 AD3d at 1051-1052). Accordingly, the Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
The defendant contends that he was deprived of a fair trial by the admission into evidence of the recordings of 11 telephone calls he made from jail after his arrest because statements made therein concerned prior uncharged crimes or bad acts, or were irrelevant and prejudicial. The defendant's contention is partially unpreserved for appellate review (see CPL 470.05[2]). In any [*2]event, "'[a]s a general rule, evidence of uncharged crimes or prior bad acts may be admitted where they fall within the recognized Molineux [People v Molineux (168 NY 264)] exceptions . . . or where such proof is inextricably interwoven with the charged crimes, provides necessary background or completes a witness's narrative'" (People v Doane, 212 AD3d 875, 880-881, quoting People v Paul, 202 AD3d 1203, 1210). Here, the defendant's reference during one of the calls to a prior uncharged crime he committed when he was a child was necessary to understand the statements he was making about the instant offense and, as the People correctly contend, can be construed as an admission to the instant offense (see People v Ventimiglia, 52 NY2d 350, 361; People v Doane, 212 AD3d at 881). Certain other challenged statements the defendant made during the calls did not, contrary to his contention, constitute Molineux evidence, as the statements did not refer to prior uncharged crimes or bad acts, but, rather, speculated generally about acts the defendant would be willing to commit (see People v Brewer, 28 NY3d 271, 276-277; People v Duchi, 176 AD3d 968, 968). Finally, while some of the statements made during the calls should not have been admitted, as they were not relevant to the instant offense and were inflammatory, the error in admitting these statements was harmless and did not deprive the defendant of a fair trial, particularly in light of the Supreme Court's charge to the jury, which served to limit the prejudice to the defendant (see People v Nasyroca, 230 AD3d 1161, 1162; People v Gilliam, 229 AD3d 565, 565; People v Smith, 171 AD3d 1102, 1104).
The defendant's contention that he was deprived of a fair trial because the Supreme Court improperly admitted into evidence more than 20 allegedly inflammatory photographs of the decedent's post-mortem injuries is unpreserved for appellate review (see CPL 470.05[2]). In any event, the defendant's contention is without merit. "[P]hotographs of the deceased are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered" (People v Pobliner, 32 NY2d 356, 369). Here, the photographs of the decedent's post-mortem injuries were properly admitted to illustrate and corroborate the testimony of the experts from the Office of the Chief Medical Examiner, as well as the testimony of other witnesses (see People v Ortiz, 230 AD3d 1163, 1164). Thus, the photographs were not admitted for the "sole purpose" of arousing the jury's emotions and prejudicing the defendant (People v Pobliner, 32 NY3d at 370; see People v Abellard, 212 AD3d 842, 843).
The defendant's remaining contentions are without merit.
IANNACCI, J.P., WOOTEN, WARHIT and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court