■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DREW CASSEUS, Appellant. [991 NYS2d 147]—

Appeal by the defendant from a judgment of the Supreme Court, Richmond County (Rooney, J.), rendered February 27, 2012, convicting him of murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant's convictions arose from an incident in which his friend, Jonathan Vazquez, and the complainant, Thomas Re, became involved in a fistfight. During the fight, when it became clear that Vazquez was losing the contest, the defendant fired several gunshots in the direction of the combatants. One of the bullets struck Re in the leg, while another killed Vazquez. The defendant ultimately was convicted, inter alia, of attempted murder in the second degree based on his shooting at Re, and murder in the second degree, under a theory of transferred intent, for the killing of Vazquez.

The defendant's contention that the evidence was legally insufficient to support his convictions of murder in the second degree and attempted murder in the second degree is unpreserved for appellate review (*see* CPL 470.05; *People v Hawkins*, 11 NY3d 484, 492 [2008]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt of these crimes beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt as to these convictions was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

Contrary to the People's contention, the defendant's assertion that the trial court should have granted his request for a justification charge is preserved for appellate review. However, the trial court properly declined to give a justification charge since, viewing the record in the light most favorable to the defendant, there was no reasonable view of the evidence to support such an instruction (*see* Penal Law § 35.15 [2] [a]; *People v Reynoso*, 73 NY2d 816, 818 [1988]; *People v Watts*, 57 NY2d 299, 301-302 [1982]; *People v Cotsifas*, 100 AD3d 1015 [2012]; *People v Small*, 80 AD3d 786, 786-787 [2011]; *People v Dickerson*, 67 AD3d 700, 700-701 [2009]; *People v Ryan*, 55 AD3d 960, 963 [2008]; *People v Ojar*, 38 AD3d 684, 685 [2007]).

The defendant's contention that he was deprived of the effective assistance of counsel because his trial attorney failed to request submission of manslaughter in the first degree as a lesser included offense of intentional murder is unpersuasive. Rather, counsel's decision reflected a legitimate trial strategy of a reasonably competent attorney (*see People v Evans*, 16 NY3d 571, 575 [2011]; *People v Satterfield*, 66 NY2d 796, 799 [1985]), since it was consistent with the defendant's statements to the police that he merely fired his weapon for the purpose of breaking up the fight, and not with the intent to kill or injure anyone. By declining to request the lesser included offense of manslaughter in the first degree and seeking only the submission of manslaughter in the second degree, trial counsel logically elected to remove from the jury's consideration the possibility of a "compromise" guilty verdict on the former offense. Hence, if

convinced of the defendant's culpability for the homicide but not that he possessed the mens rea for murder in the second degree, the jurors could only have found that he acted recklessly, as the defendant's own statements suggested. The fact that this reasonable strategy proved unsuccessful does not equate with ineffective assistance of counsel, and the defendant's assertions to the contrary " 'confus[e] true ineffectiveness with mere losing tactics and accord[ ] undue significance to retrospective analysis' " (*People v McGee*, 20 NY3d 513, 521 [2013], quoting *People v Benevento*, 91 NY2d 708, 712 [1998]). In this regard, we do not share our dissenting colleague's view that had manslaughter in the first degree been charged, the outcome of the trial may have been more favorable to the defendant. The jury's separate conviction of the defendant for the attempted intentional murder of Re reflected its finding that the defendant acted with the specific intent to kill when shooting at Re. There is no reason to believe that the jurors would have found that he contemporaneously fired the errant shot that killed Vazquez with a less culpable mens rea of intent to seriously injure Re so as to support a conviction of manslaughter in the first degree. Thus, under the circumstances, and upon a review of the entire record, we conclude that the defendant received meaningful representation (*see People v Baldi*, 54 NY2d 137 [1981]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Mastro, J.P., Dickerson, and Lott JJ., concur.

Hinds-Radix, J., dissents and votes to reverse the judgment appealed from, on the law and as a matter of discretion in the interest of justice, and to order a new trial, with the following memorandum: On the evening of December 28, 2010, the defendant and his friend Jonathan Vazquez, along with some other friends, were standing in front of a corner store in Staten Island. As Thomas Re exited the store, Vazquez challenged him to a fight. Re testified at trial that he took his shirt off to show Vazquez that he was unarmed and was going to fight using his hands. Re and Vazquez moved to the side to avoid surveillance cameras, and Re put Vazquez in a "headlock." Re testified that Vazquez said he was finished, but after Re let him go, Vazquez "sucker punched" him in the lip. Then Re heard a gunshot, which went "in the air," and he saw that the defendant was holding a gun.

One of Re's companions similarly testified at trial that the defendant's first shot went "in the air." The companion further testified that the defendant fired four or five additional shots, but the defendant "wasn't aiming it. It was like he had a ham-

mer in his hand." Re's sister's trial testimony described the defendant as flinging his arm as he fired in the direction of the fight.

One shot entered Re's inner thigh, just above the knee cap, while another shot hit Vazquez. Re and his companions fled the scene to their car. As they fled, Re's sister turned and said to the defendant, "Oh, my god, you shot your mans [sic]."

It is undisputed that the gun used by the defendant was previously stored under the back porch of Vazquez's family's residence. Upon his arrest, the defendant told the police that, after Vazquez and Re decided to fight each other, Vazquez took the gun out of his coat pocket and gave it to the defendant, with instructions that, "if shit gets crazy, burn that nigger." When Re had Vazquez pinned on the ground, Vazquez looked at the defendant with, what the defendant interpreted was, a "what-the-hell-are-you-doing face." The defendant claimed that he fired one shot in the air to break up the fight. Re did not release his chokehold of Vazquez, so the defendant fired another shot towards Re. The defendant claimed that he heard two return shots. The defendant fired one more shot towards Vazquez, and noticed that Vazquez was sprawled on the ground. Vazquez died shortly thereafter of a single gunshot wound to the left side of the head.

According to one of Vazquez's brothers, shortly after the crime, the defendant returned to Vazquez's family's residence and told the brother that it was "crazy out there," and "he may have shot my brother in the leg."

The defendant's conduct, as described by the eyewitnesses, and his statements to police, strongly indicated that he may not have intended to kill anyone, but, rather, to the extent he was aiming the gun at all, he fired in the air or at the legs of the participants to stop the fight. He was charged in the indictment, inter alia, with intentional murder based upon a transferred intent to kill, and manslaughter in the first degree based upon a transferred intent to inflict serious physical injury.

During the charge conference, when discussing charging the jury with lesser included offenses of intentional murder, defense counsel requested a charge of manslaughter in the first degree based upon an affirmative defense of extreme emotional disturbance. When making this request, defense counsel stated, in effect, that extreme emotional disturbance was the only basis upon which he was requesting a charge of manslaughter in the first degree. The trial court rejected this request, noting that no testimony with respect to extreme emotional disturbance was elicited at the trial. Defense counsel did not request the man-

slaughter in the first degree charge for the count of the indictment that was based upon a transferred intent to inflict serious physical injury. However, a reasonable view of the evidence supported this charge (*see People v Sanchez*, 226 AD2d 562, 563-564 [1996]; *People v Cotton*, 191 AD2d 577 [1993]). In fact, the trial court offered to instruct the jury with respect to manslaughter in the first degree based upon an intent to inflict serious physical injury, and defense counsel replied by asking for a moment to think about it. After a short pause, he responded, "Depending on how you ruled on the—I would ask not to have that charged." The trial court asked for clarification, and defense counsel replied "I will ask to have it not charged."

Defense counsel's failure to request or agree to an instruction with respect to manslaughter in the first degree based upon an intent to cause serious physical injury was not supported by any viable trial strategy and was a prejudicial error which may have affected the outcome. Indeed, during deliberations, the jury asked for additional instructions with respect to "murder in the second degree with intent to cause death, manslaughter in the second degree and attempted murder in the second degree." After about two days of deliberations, the jury reached the verdict under review.

In view of the foregoing, it is apparent from the record that defense counsel's performance in this regard constituted ineffective assistance of counsel warranting a new trial (*see People v Fisher*, 18 NY3d 964, 967 [2012]).