=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 37
The People &c.,
          Respondent,
       v.
Marcellus Johnson,
          Appellant.

          Stanley E. Neustadter, for appellant.
          Susan Axelrod, for respondent.
          Legal Aid Society; Brooklyn Defender Services, amici
curiae.

RIVERA, J.:

          Defendant challenges the People's use at his criminal

trial of excerpts from certain recorded telephone calls defendant

made to family and friends during his detention at Rikers Island

Correctional Facility.  The calls were recorded and made

available to the prosecution by New York City's Department of

- 1 -

Correction (the Department), in accordance with the Department's policy and practice of monitoring inmates' telephone calls, and releasing those recordings, upon request, to the City's District Attorneys' Offices.

The conditions attendant to pretrial detention, which by its nature imposes limits on communication with the outside world, may, as defendant argues, result in the unwise and imprudent use of unprivileged telephone calls to communicate matters related to a detainee's prosecution.  However, we are constrained by the law applicable to the arguments, as narrowed by defendant, to conclude that on the record before us defendant is not entitled to a new trial.  Therefore, the Appellate Division should be affirmed.


I.  Regulatory Framework

Under the Rules and Regulations of the City of New York inmates are permitted to make calls during their incarceration, subject to the Department's authority to listen to and monitor all calls not otherwise exempted or privileged.  Title 40 RCNY § 1-10 provides, in relevant part,

> "(a) Policy. Prisoners are entitled to make
> periodic telephone calls. A sufficient number
> of telephones to meet the requirements of
> this section shall be installed in the
> housing areas of each facility.
> ....
> (h) Supervision of telephone calls. Upon
> implementation of appropriate procedures,
> prisoner telephone calls may be listened to

> or monitored only when legally sufficient
> notice has been given to the prisoners.
> Telephone calls to the Board of Correction,
> Inspector General and other monitoring
> bodies, as well as to treating physicians and
> clinicians, attorneys and clergy shall not be
> listened to or monitored."

(40 RCNY § 1-10 [a], [h]).

The Department has implemented its policy and procedures for recording and monitoring inmate telephone calls in an Operations Order. The Order states the Department "shall record all inmate telephone calls and retain these recordings," with the exception of calls to inmates' attorneys and other persons similarly included in the Department's "Do Not Record List."

The Operations Order further provides for three different notices to advise inmates that telephone calls are recorded and/or monitored. One notice is contained in signs posted near the telephones available for inmate use, and states in English and Spanish that:

> "Inmate telephone conversations are subject
> to electronic recording and/or monitoring in
> accordance with Departmental policy. An
> inmate's use of institutional telephones
> constitutes consent to this recording and/or
> monitoring."

Another notice is set forth in the Inmate Handbook, advising inmates "that calls may be recorded and/or monitored." Yet another notice is played in English and Spanish at the beginning of each call, and informs the inmate that "[t]his call may be

recorded and monitored."

Although the Department indicates that it records all non-privileged calls, it only monitors on a needs basis, meaning a staff member listens to the recorded call when a situation "prompts" review. As a general matter, the Department has identified the types of calls that trigger monitoring as those involving institutional and public safety and security.

The recordings are confidential and not available to the public, but New York City's District Attorneys' Offices may request a copy of an inmate's recorded call. Such requests are decided within three business days by the Department's Deputy Commissioner for Legal Matters, although the Operations Order does not explain the criteria for granting or denying such requests. Upon approval of a request, the copy of the recording is turned over to the District Attorney's representative, who signs a form indicating receipt.


II.  Prosecution's Use of Defendant's Recorded Calls at Trial

Defendant was arrested on charges of robbery, and when he could not make bail he was remanded to Rikers Island. The People acquired from the Department, following the procedures laid out in the Operations Order and through the use of a subpoena duces tecum, dozens of recordings of telephone conversations that defendant placed to his friends and family.

The People sought to play excerpts of those

conversations at trial.  In defendant's motion in limine to preclude the use of the recordings he argued that (1) the disclosure was unauthorized and unwarranted under the Department's Operation Order, and (2) that disclosure to the prosecutor undermined defendant's Sixth Amendment right to counsel.  The court denied the motion.

At trial, the prosecutor introduced into evidence, played for the jury, and replayed on summation excerpts from nine of defendant's recorded telephone calls.  In these calls the defendant made several incriminating statements and repeatedly used offensive and vulgar language to discuss the victim and other individuals involved in the robbery.

The jury convicted defendant of two counts of third degree robbery (Penal Law § 160.05), three counts of fourth degree larceny (Penal Law §§ 155.30 [4], [5]), and one count of possession of stolen property (Penal Law § 165.45 [2]).  The Appellate Division summarily rejected defendant's challenge to the admission of the recordings, finding that the calls were admissible, "notwithstanding that defendant's right to counsel had attached."

A Judge of this Court granted leave to appeal (25 NY3d 951 [2015]).


III.  Defendant's Claims

In order to properly address and frame defendant's

legal claims, we first clarify what defendant does not allege on this appeal.  He does not allege that any conversations with his defense counsel were recorded and admitted at trial, or that the Department permits such monitoring.  To the contrary, defendant recognizes that the Operations Order expressly prohibits the recording and monitoring of conversations with an inmate's attorney.  Nor does defendant assert that the intention of the City's regulation or the Department's Operations Order is to create and collect information strictly for use by the prosecution against a detainee at trial.  Defendant candidly admits that the Department has a legitimate interest in recording and monitoring detainee telephone communications.

Defendant instead challenges what he describes as the Department's practice of "automatic, unmonitored harvesting of intimate conversations of pre-trial inmates," and the subsequent dissemination of the Department's recordings to District Attorneys' offices for use in criminal prosecutions.  Defendant claims the practice violated his right to counsel, exceeds the scope of the Department's regulatory authority, and was conducted without defendant's consent.  The claims are either without merit or unpreserved and therefore do not warrant reversal and a new trial.

A.  <u>Sixth Amendment Violation</u>

Defendant claims the People, by combing through all the telephone calls are able to obtain information about a

defendant's defense strategy and decision-making, outside the presence of counsel, in violation of his Sixth Amendment right to counsel.[*]  Essentially, defendant claims that the Department acts as an agent for the District Attorney in eliciting potentially damaging statements merely by recording the calls.  He points to no individual that the District Attorney's Office, or for that matter the Department, employed as an agent of the government who acted in a manner to prompt or provoke information from defendant.  We therefore find no support in the law or facts of this case for defendant's constitutional claim.

The Sixth Amendment right to counsel prohibits the use of incriminating statements deliberately elicited from a defendant by government agents (see Fellers v United States, 540 US 519, 524 [2004]; United States v Henry, 447 US 264, 270 [1980]).  As this Court has recognized, the "right to counsel protects persons, whether in custody or not, against the use of incriminating statements made as the result of governmental interrogation, including prosecutorial inducements to make such statements without the assistance of counsel" (People v Velasquez, 68 NY2d 533, 536 [1986]).  Moreover, "the right to

---

[*] Amici in support of defendant's Sixth Amendment argument claim that examples exist where the People's access to telephone calls to friends and family provided insight into possible defense strategies and preparation, such as whether to employ an alibi defense.  However, since defendant has made no claim that in his case any trial strategy or defense was revealed to the prosecutor we do not address this issue.

counsel protects an accused in pretrial dealings with the overwhelming, coercive power of the State [], by excluding incriminating evidence obtained by the State in violation of that right. Concomitantly, the exclusion of incriminating evidence obtained by agents of the State operates to deter their interference with the rights of the accused" (id. at 537 [internal citations omitted]). Thus, a violation of the right to counsel requires the "involvement of the State in eliciting that evidence" (id.)

Here, the Department did not serve as an agent of the State when it recorded the calls it turned over to the District Attorney's Office. Defendant was not induced by any promise, or coerced by the Department, to call friends and family and make statements detrimental to his defense. Nothing in the record suggests that the Department solicited, elicited, encouraged or provoked these conversations. Moreover, defendant made the telephone calls aware that he was being recorded, and the mere act of recording is no different from an informer sitting mute, not provoking or prompting conversation but merely listening to a statement freely made. Under these circumstances, where "the government's role is limited to the passive receipt of [] information, the informer is not, as a matter of law, an agent of the government" (People v Cardona, 41 NY2d 333, 335 [1977]).

Defendant and amici assert that the particular circumstances of detention support treating the Department as an

agent because detainees have limited access to outsiders, including their lawyers.  Thus, left without options available to those able to make bail, a detainee, out of necessity, makes statements during telephone conversations that are detrimental to the defense.  However accurate this description may be of the realities of the Rikers Island pretrial detention environment, and the opportunity presented to prosecutors by the conditions under which detainees are confined, it does not establish the Department acted as an agent in defendant's case.

### B.   Defendant's Ultra Vires Claim

Defendant argues the Department acted beyond the scope of its authority as provided for in Title 40 RCNY § 1-10 (h), by automatically disseminating recordings of conversations that are unrelated to the Department's legitimate purpose of monitoring threats to institutional security, and without the Department having first assessed the propriety of the District Attorney's request.  Regardless of whether the record supports defendant's allegations of ultra vires conduct, he is not entitled to suppression or preclusion of the excerpts on these grounds.

While "violation of a statute does not, without more, justify suppressing the evidence to which that violation leads" (People v Greene, 9 NY3d 277, 280 [2007], citing People v Patterson, 78 NY2d 711, 716-717 [1991]), suppression is warranted when the violation implicates a constitutionally protected right (Patterson, 78 NY2d at 717).  However, defendant fails as a

threshold matter to identify a statutory right violated by the Department, instead relying on 40 RCNY § 1-10 (h).  We need not determine in this case whether a regulatory violation also implicates the concerns that animate the exception recognized in <u>Patterson</u> because even if it did it would not change our analysis.  Section 1-10 (h) specifically provides that inmate telephone calls with attorneys "shall not be listened to or monitored."  Thus, section 1-10 (h) only implicates the Sixth Amendment right to counsel to the extent it guards against violations of privileged attorney-client communications.  It does not prohibit the Department's supervision over inmates' telephone conversations with friends and families involving non-privileged matters, such as the calls at issue in defendant's case.

### C.  <u>Lack of Consent</u>

Defendant alleges that he did not consent to the Department's dissemination of his recorded conversations simply by using the Rikers Island telephones.  According to defendant, his consent cannot be implied because he was never informed that the recordings may be released to the prosecutor.  Defendant acknowledges, though, that any such defective notice could be ameliorated by an express Department notification that the recorded calls may be turned over to the District Attorney.

However, we do not reach the merits of this claim, or address whether additional notice by the Department would serve as a best practice, because the claim itself is unpreserved.  As

the record establishes, defendant failed to argue to the trial court, as he does now, that his consent cannot be broader than the notice provided to him (see People v Gray, 86 NY2d 10, 19 [1995] ["in order to preserve a claim of error...a defendant must make his or her position known to the court"]).

IV.

Our resolution of the narrowly drawn issues presented on this appeal should not be interpreted as this Court's approval of these practices. Nor does our holding limit the traditional function of the trial judge in criminal matters. Rather, due to the possibility of prejudice inherent in the prosecutor's use of inmate recordings, the trial judge's role as gatekeeper remains unchanged and necessary to ensure compliance with constitutional mandates and the usual rules of evidence and criminal procedure.

Accordingly, the order of the Appellate Division should be affirmed.

The People of the State of New York v Marcellus Johnson

No. 37

PIGOTT, J. (concurring):

I agree with the majority's conclusion and with its analysis of the legal issues defendant has raised. In my view, however, the District Attorney's direct and unregulated access to all of an inmate's non-privileged telephone conversations deserves further mention. The current arrangement between the Department of Corrections and the District Attorney's office creates a serious potential for abuse and may undermine the constitutional rights of defendants who are financially unable to make bail. Something needs to change.

Pretrial detainees like defendant are presumed innocent until proven guilty. Because they have not yet been convicted of a crime, the State's only legitimate purpose for detaining them is to assure their presence at trial, and their liberty may not be restrained more than necessary to accomplish that result (see Cooper v Morin, 49 NY2d 69, 81 [1979], cert denied sub nom. Lombard v Cooper, 446 US 984 [1980]; 4 Sir William Blackstone, Commentaries on the Laws of England at 300 [explaining that pre-trial detention is authorized "only for safe custody, and not for punishment"]).

The Department of Corrections also has a legitimate

interest in maintaining the safety and security of its detention facilities (see Campbell v McGruder, 580 F2d 521, 529 [DC Cir 1978]; Cooper, 49 NY2d at 81), and thus has "broad latitude to adopt rules that protect the safety of inmates and corrections personnel and prevent escape or unlawful entry" (United States v Cohen, 796 F2d 20, 22 [2d Cir 1986], citing Bell v Wolfish, 441 US 520, 547 [1979]).  To that end and for that limited purpose, the Rules of the City of New York authorize the Department to record and monitor all inmates' telephone conversations with the exception of those placed to attorneys, physicians and clergy (see 40 RCNY § 1-10[h]).  Prisoners are clearly and repeatedly cautioned that "telephone conversations are subject to electronic recording and/or monitoring in accordance with Departmental policy" and that the "use of institutional telephones constitutes consent to this recording and/or monitoring" (id.).

The Department's purpose in recording and monitoring these conversations is limited to ensuring the safety and security of its facilities, not harvesting evidence for the prosecution.  Yet the People admit that, unknown to defendants, they routinely obtain and review such recordings before trial, in search of anything that can be used against them.  The People justify this practice principally on the basis of consent: because the calls were recorded by the Department, and the detainee knew the Department could record and/or monitor the calls, he has no expectation of privacy in the conversations and is not entitled to shield them from the prosecution.  But there

is "a major distinction between prison authorities having access to prisoners' phone calls for purposes of prison security and discipline, and the prosecutors of that pretrial prisoner having the same access for purposes of gaining advance knowledge of the pretrial prisoner's trial strategy and potential witnesses," particularly in situations (not present in this case) in which a prisoner is representing himself pro se (United States v Mitan, 2009 WL 3081727 at *12 [ED PA 2009]).

It has long been known that a defendant at liberty pending trial already stands a better chance of not being convicted or, if convicted, of not receiving a prison sentence, than those who are detained before trial, even after controlling for factors such as prior criminal record, seriousness of the charge, bail amount, type of counsel, community ties and employment status (see Barker v Wingo, 407 US 514, 533 n 35 [1972]; McGruder, 580 F2d at 531, citing Ares, Rankin & Sturz, The Manhattan Bail Project: An Interim Report on the Use of Pre-Trial Parole, 38 NYU L Rev 67, 86 [1963] and Rankin, The Effect of Pretrial Detention, 39 NYU L Rev 641, 655 [1964]).  One study showed that 64 percent of those continuously in jail from arraignment to adjudication were sentenced to prison, while only 17 percent of defendants who made bail received prison sentences (McGinnis v Royster, 410 US 263, 282 [1973] [Douglas, J., dissenting], citing Programs in Criminal Justice Reform, Vera Institute of Justice, Ten-Year Report 1961-1971 [1972]).  Another study found that 77 percent of defendants who were detained

before trial were eventually convicted of some offense, compared to 55 percent of those released pending disposition (Andrew J. Leipold, How the Pretrial Process Contributes to Wrongful Convictions, 42 Am Crim L Rev 1123, 1131 n 27 [2005] [citing a 2000 study of the Bureau of Justice Statistics]).

One explanation for this inequity is "the limitations imposed by incarceration" (McGruder, 580 F2d at 532).  Pretrial detention hampers a defendant's preparation of his defense by limiting his "ability to gather evidence [and] contact witnesses" during the most critical period of the proceedings (id. at 532; see also Powell v Alabama, 287 US 45, 57 [1932]).  During that important pretrial period, defendant, either acting pro se or with the assistance of counsel, negotiates for dismissal or reduction of the charges, engages in motions practice, considers offers to plead guilty and decides which witnesses to call (see United States v Vitta, 653 F Supp 320, 337 [ED NY 1986], citing Wald, Pretrial Detention and Ultimate Freedom: A Statistical Study - Foreword, 39 NYU L Rev 631, 633 [1964]).  Indeed, the defendant "is often the key source of factual details on which to base pretrial motions and negotiations" (id.).  A defendant free on bail or on his own recognizance can therefore make good use of that liberty by consulting and participating fully with counsel in time-consuming preparations for trial, including tracking down witnesses and evidentiary leads (id.).

The detained suspect cannot make these same preparations because he lacks a similar ability to contact

witnesses and gather evidence.  Moreover, any telephone conversations with family members or potential witnesses are now turned over to the prosecution for it to review.  Not only do prosecutors obtain critical information about key defense witnesses and possible defenses well before those materials would have been disclosed, but they can also use innocuous details to their advantage in negotiating plea deals, for example, by combing through a detainee's recorded conversations for information about his financial limitations or family obligations.  The amici suggest that even more unsavory situations exist, such as a prosecutor persuading a defendant's wife to testify against him after confronting her with the defendant's recorded conversations revealing an extra-marital affair.  Although the prosecutor in this case did not engage in any of these more troubling actions and defense counsel did not move for a mistrial or raise a claim of prosecutorial misconduct, it is easy to see the potential for abuse.

And what is the alternative, the People say?  Don't discuss any details about your case over the telephone except with your attorney; don't ask your spouse to look into a particular witness's availability or get medical records in preparation for your defense; don't call your friend to ask for help tracking down necessary evidence; essentially, don't talk to anyone other than your attorney about anything related to your case unless you want the prosecutor to know about it.  This is not a viable alternative, at least not one that would enable a

defendant adequately to "prepare a defense . . . without knowledge of the prosecutors" (Mitan, supra at *8).

Faced with the possibility that anything a defendant says over the phone can (and will) be used against him at trial, the defendant's only real choice is not to use the phones at all. I cannot sanction that result.  Trial courts must be vigilant to protect the detainees' constitutional rights, and consideration should be given to placing limitations on the prosecutor's ability to obtain these recordings.  Although the recordings in this case were obtained by the prosecutor through a subpoena duces tecum and reviewed by Supreme Court prior to disclosure, in other cases the People's unfettered access can prejudice a defendant and impair his ability to prepare a defense, which "skews the fairness of the entire system" (Barker, 407 US at 532).

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Rivera.  Chief Judge DiFiore and Judges Pigott, Abdus-Salaam, Stein, Fahey and Garcia concur, Judge Pigott in a separate concurring opinion.

Decided April 5, 2016