OPINION OF THE COURT
Abdus-Salaam, J.
The trial court did not abuse its discretion as a matter of law in admitting a phone call between defendant and his ex-girlfriend as an adoptive admission. Once the People satisfied the threshold evidentiary requirements for admissibility, the call was properly placed before the jury to weigh its import and significance. That the call was recorded while defendant was incarcerated does not change our analysis.
1—1
Defendant was charged with several counts of assault, trespass and criminal mischief, all arising out of incidents involving him and his ex-girlfriend. The proof at trial established that they had a tumultuous relationship. The People introduced evidence of separate crimes from different dates. One involved defendant purposefully breaking the victim’s cable box and hitting her in the face; another involved him pushing her to the ground and stomping on her chest, ultimately breaking two of her ribs; and the third involved him *689 entering her apartment without her permission and remaining until he was arrested. As the People conceded, the victim was not the most reliable witness. She had problems with alcohol and drugs, a criminal history which included violence toward other ex-partners, mental health issues related to depression and schizophrenia, and had, on more than one occasion, either lied to or been less than forthcoming with the police and the District Attorney’s Office. She did not appear for her scheduled testimony at the start of trial and had to be forcibly brought to court in handcuffs. The jury was aware of these issues.
During the trial, the court, upon the People’s application, allowed the prosecutor to play a telephone call made from defendant to the victim while he was incarcerated. The People sought to introduce the call as an adoptive admission by silence, which defendant opposed. During the conversation, the victim repeatedly accused defendant of breaking her ribs. Defendant never denied the allegations, and instead gave non-responsive and evasive answers. For example, after she forcefully stated many times that he had broken her ribs and shown no sympathy, his response was “so I’m a threat to you?” When she said he needed time to think and change so he would not do this to anyone else, he responded by asking whether his brother had called her. They also discussed a potential jail sentence, when he accused her of “not caring” if he got “a year.”
The trial court allowed defense counsel to craft a limiting instruction, and counsel offered the following, which the court read to the jury before the call was played and again during its final charge:
“I’m allowing the conversation into evidence for the limited purpose of having you determine if such failure to respond and to remain silent is indeed an admission, and if you so find, give such admission whatever weight you deem appropriate in determining its significance.
“In making this determination, you should apply the same tests you would use in your own everyday life in doing so.
“You may wish to keep in mind, one, an individual [⅛] silence may be attributable to his awareness that he is under no obligation to speak.
“Two: An individual’s natural caution that arises *690 from his knowledge that anything he says may be used against him.
“Three: An individual may refrain from speaking because he believes that efforts to exonerate himself under the circumstances would be futile.
“Now, to the extent that the telephone call references the potential jail sentence, the jury is to disregard that portion of the call.”
The jury found defendant guilty of attempted assault in the third degree, assault in the third degree, criminal mischief in the fourth degree, and criminal trespass in the second degree. The Appellate Division modified the judgment in a manner not relevant to this appeal, and otherwise affirmed, holding that the trial court properly exercised discretion in admitting the call (126 AD3d 623 [1st Dept 2015]). A Judge of this Court granted defendant leave to appeal (26 NY3d 1093 [2015]), and we now affirm.
II.
An adoptive admission occurs “when a party acknowledges and assents to something ‘already uttered by another person, which thus becomes effectively the party’s own admission’ ” (People v Campney, 94 NY2d 307, 311 [1999], citing 4 Wigmore, Evidence § 1609 at 100 [Chadbourn rev]). Assent can be manifested by silence, because “[a] party’s silence in the face of an accusation, under circumstances that would prompt a reasonable person to protest, is generally considered an admission” (Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts § 8:17 [West’s NY Prac Series Nov 2016 Update]; see also People v Koerner, 154 NY 355, 374 [1897] [“If he is silent when he ought to have denied, the presumption of acquiescence arises”]). We have also recognized that “an equivocal or evasive response may similarly be used against [a] party either as an adoptive admission by silence or an express assent” (Campney, 94 NY2d at 316 [Smith, J., dissenting] [internal quotation marks omitted], quoting 2 McCormick, Evidence § 262 at 176 [4th ed 1992]). Here, despite the dissent’s characterization, defendant was not silent in the face of the victim’s accusations. He gave “equivocal or evasive response[s]” {id.).
Though we recognize that evidence of a party’s silence or evasiveness can have “minimal probative significance” and a *691 “substantial” risk of prejudice (People v Conyers, 52 NY2d 454, 458-459 [1981]), our rules of evidence allow that “manifestations made in response or reaction to an accusatory overture, which may be generally inadmissible, may be received into evidence, nevertheless, to establish a relevant demonstrative response of the affected party” (Campney, 94 NY2d at 312 [internal quotation marks omitted]). Further, the “danger” of the potential ambiguity of a party’s silence is not as strongly implicated where, as here, “a verbalized response is involved, not a failure to speak” (id. at 313).*
To use a defendant’s silence or evasive response as evidence against the defendant, the People must demonstrate that the defendant heard and understood the assertion, and reasonably would have been expected to deny it (see People v Allen, 300 NY 222, 225 [1949]). As with almost all evidence, “[t]he determination whether a threshold foundation has been established for the admissibility of the declaration or manifested act is made by the trial court, in light of ‘all the facts and circumstances surrounding the incident,’ while the ‘value or effect of this evidence’ is weighed by the jury” (Campney, 94 NY2d at 312, quoting People v Ferrara, 199 NY 414, 430 [1910]). The threshold question of whether a defendant heard and understood another party’s accusations involves a “factual and inferential weighing responsibility” for which “[t]he trial court is the proper forum” (id. at 312-313).
Here, it is clear that the trial court did not abuse its discretion as a matter of law when it made the threshold determination that defendant heard and understood the victim’s accusations against him. The court properly concluded that the content of the conversation, itself, demonstrates that defendant both heard and understood what she was saying, but chose to give evasive and manipulative responses. This view is supported by the context of the call, where, in a domestic violence case, defendant voluntarily contacted the victim in violation of *692 an order of protection in an attempt to influence her to drop the charges against him. Once this foundation was established, it was proper for the call “to be placed before the jury so that the jury might weigh the import, along with its other instructions and responsibilities” (id. at 313).
Though we are mindful of case law suggesting that evidence of a defendant’s silence “may have a disproportionate impact upon the minds of the jurors” (Conyers, 52 NY2d at 459), here, we are satisfied that the jury was fully equipped to assess the significance and dynamics of this phone call. At the outset, during the call, defendant was not silent, but responded to the victim’s accusations. Further, at trial, the jury heard evidence of the rocky relationship between them, and was aware of the allegations of domestic violence. In response, defendant attacked the victim’s credibility and suggested she had a motive to lie. The jury knew that she had problems with alcohol and drugs, that she had mental health issues, and that she had been less than truthful about defendant’s actions before. In this context, the jurors could, in the simple exercise of their common sense, understand the significance of the call.
Finally, defendant argues that it was error for the court to deny his request to redact that portion of the call which references, incorrectly, defendant’s sentencing exposure. However, in this domestic violence case, the mention of a potential prison term was inextricably intertwined with defendant’s purpose of calling the victim to manipulate her to drop the charges against him (“Oh, so you don’t care if I get a year?”). We conclude that the court did not abuse its discretion as a matter of law in declining to redact this portion of the call. And with respect to this issue, as with admission of the call, any potential prejudice was mitigated by the court’s thorough limiting instruction, crafted by defense counsel.
I—I h-f I—I
Defendant and the dissent urge that despite our state evidentiary law’s allowance of adoptive admissions, this call should not have been admitted because it was made while he was incarcerated. Because all of his calls were recorded and monitored by the Department of Correction, a reality he was aware of, he argues that this conversation was akin to silence in the face of interrogation. We decline to adopt this view. As we recently explained, “[djefendant was not induced by any promise, or coerced by the Department, to call [the victim] and *693 make statements detrimental to his defense. . . . and the mere act of recording is no different from an informer sitting mute, not provoking or prompting conversation but merely listening to a statement freely made” (People v Johnson, 27 NY3d 199, 206 [2016]). Notably, the adoptive admission from Campney was made in an interrogation room, in the presence of several police officers (though not in response to any question from an officer). Here, defendant voluntarily contacted and engaged in a conversation with a civilian. That his evasive responses were made during a call while he was incarcerated does not render them the product of an interrogation or its functional equivalent. Under the circumstances of this case, where defendant voluntarily called his accuser in violation of an order of protection to persuade her to drop the charges, the call was not the product of interrogation or its functional equivalent. As always, “the trial judge’s role as gatekeeper remains unchanged and necessary to ensure compliance with constitutional mandates and the usual rules of evidence and criminal procedure” (Johnson, 27 NY3d at 208).
IV.
We have considered defendant’s remaining contentions and find them unpreserved. Accordingly, the Appellate Division order, insofar as appealed from, should be affirmed.

 The dissent interprets our holding in Campney too narrowly. By stating that “[a]pplying standard principles, we conclude that the trial court appropriately permitted the jury to consider whether defendant adopted his accomplice brother’s written statement” (Campney, 94 NY2d at 310), we did not hold that these “standard principles” should be limited solely to a case with the particular facts of a defendant adopting his accomplice brother’s written statement, as the dissent here suggests. Instead, we apply these standard evidentiary principles to the facts before us, as we did in Campney, and conclude that the trial court similarly “appropriately permitted the jury to consider” whether defendant adopted the victim’s statement.