■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMMANUEL DIAZ, Appellant. [53 NYS3d 94]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Balter, J.), rendered February 24, 2014, convicting him of robbery in the first degree and burglary in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant contends that he was deprived of the effective assistance of counsel as a result of his trial counsel's failure to request that the jury be charged on the affirmative defense to robbery in the first degree and burglary in the first degree that the object displayed was not a loaded weapon from which a shot, capable of producing death or other serious physical injury, could be discharged (*see* Penal Law §§ 140.30 [4]; 160.15 [4]; *People v Miaram*, 97 AD3d 606, 607 [2012]). However, contrary to the defendant's contention, his trial counsel's decision

not to request an instruction on that affirmative defense reflected a legitimate trial strategy of a reasonably competent attorney (*see People v Casseus*, 120 AD3d 828, 829 [2014]). Defense counsel pursued a misidentification defense at trial, which would have been undermined had defense counsel put on inconsistent evidence that, while the defendant was present during the incident, the weapon he displayed was not loaded and operable (*see People v Howard*, 22 NY3d 388, 401 [2013]; *see also People v Gordon*, 92 AD3d 580, 581 [2012]). Further, the Supreme Court was not required to give the charge, sua sponte, since such an instruction would have interfered with the defendant's theory of the case (*see People v Acevedo*, 84 AD3d 1390, 1391 [2011]).

The defendant's contention that he was deprived of his right to counsel under the Federal and State Constitutions by the admission into evidence of recorded telephone calls he made during his detention at Rikers Island Correctional Facility (hereinafter Rikers) is without merit (*see People v Johnson*, 27 NY3d 199, 205-206 [2016]; *People v Roberts*, 139 AD3d 985, 986 [2016]).

Furthermore, there is no merit to the defendant's contention that the recordings of his telephone calls from Rikers were improperly admitted into evidence at trial because he did not consent to the dissemination of the recordings by the New York City Department of Correction (hereinafter the DOC) to the prosecution. The defendant does not identify any statutory or constitutional violation with respect to the admission of the recordings. Instead, the defendant argues that the notice he received that his telephone calls would be monitored and recorded provided no basis to infer that he consented to the distribution of those recordings to the prosecution, and that any consent to the monitoring and recording of his calls was for the limited purpose of ensuring prison security.

"A party's consent to the taping of his [or her] telephone calls can be inferred from his [or her] knowledge that such conversations would be monitored" (*People v Jackson*, 125 AD3d 1002, 1004 [2015]; *see People v Koonce*, 111 AD3d 1277, 1279 [2013]; *Curley v Board of Trustees of Vil. of Suffern*, 213 AD2d 583, 583 [1995]; *United States v Amen*, 831 F2d 373, 378-379 [2d Cir 1987]). Here, the defendant impliedly consented to the monitoring and recording of his telephone conversations by using the prison telephones despite being notified that such calls were being monitored (*see People v Jackson*, 125 AD3d at 1004; *United States v Workman*, 80 F3d 688, 693-694 [2d Cir 1996]; *United States v Amen*, 831 F2d at 379). The record reflects that

the defendant was on notice from several sources of the prison's policy of monitoring and recording inmate telephone conversations, including the inmate handbook, signs posted next to the telephones, and a recorded message which plays prior to each telephone call. In light of these notifications, "it was no longer reasonable for [the defendant] to presume an expectation of privacy as to the content of those telephone conversations" (*United States v Busch*, 2013 US Dist LEXIS 188419, \*165 [WD NY, July 15, 2013, No. 09CR331A]; *see United States v Shavers*, 693 F3d 363, 389-390 [3d Cir 2012], *vacated and remanded on other grounds* 570 US —, 133 S Ct 2877 [2013]). Notably, the defendant indicated during certain of the recorded calls that he was hesitant about discussing the details of the crime over the telephone. Although the inmate handbook provides that "all calls may be recorded for security purposes with the exception of privileged calls," the signs posted next to the telephones broadly state that "[i]nmate telephone conversations are subject to electronic monitoring and/or recording in accordance with department policy," and that "[a]n inmate's use of [institutional] telephones constitutes consent to this monitoring and/or recording." Additionally, an employee of the DOC testified that prior to each call, an inmate will hear a recorded message which states that the call may be recorded and monitored. Thus, contrary to the defendant's contention, the notifications, as a whole, did not limit the scope of the defendant's consent to the monitoring and recording of his telephone calls solely for security purposes (*see United States v Faulkner*, 439 F3d 1221, 1223-1224 [10th Cir 2006]; *United States v Peoples*, 71 F Supp 2d 967, 972, 979 [WD Mo 1999]).

We note that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," and certainly "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that . . . are enjoyed by convicted prisoners" (*Bell v Wolfish*, 441 US 520, 545 [1979]). Since any concern that the notice provided to inmates by the DOC is inadequate can be readily ameliorated by an express notification that the recorded calls may be turned over to the District Attorney, the better practice going forward may be for the DOC to include such a warning (*cf. People v Johnson*, 27 NY3d at 207-208). Nevertheless, the absence of such a warning does not render the calls inadmissible (*see People v Koonce*, 111 AD3d at 1279; *United States v Green*, 2016 WL 3610331, \*11, \*13-14, 2016 US Dist LEXIS 87388, \*37, \*42-43 [WD NY, July 6, 2016, No. 12-CR-83S]; *United States v Busch*, 2013 US Dist LEXIS 188419,

*164; *United States v Green*, 842 F Supp 68, 71-72 [WD NY 1994], *affd sub nom. United States v Workman*, 80 F3d 688 [2d Cir 1996]). Rather, the trial court must weigh the probative value of the recordings against the potential for prejudice to the defendant (*see generally People v Harris*, 26 NY3d 1, 5 [2015]). "[D]ue to the possibility of prejudice inherent in the prosecutor's use of inmate recordings, the trial judge's role as gatekeeper remains unchanged and necessary to ensure compliance with constitutional mandates and the usual rules of evidence and criminal procedure" (*People v Johnson*, 27 NY3d at 208).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Roman, Cohen and Connolly, JJ., concur.

Hall, J.P., dissents, and votes to reverse the judgment, on the law, and order a new trial, with the following memorandum: Pursuant to the Rules of the City of New York and an Operations Order implemented by the New York City Department of Correction (hereinafter the DOC), the respective New York City District Attorneys' Offices have essentially unfettered access to the recordings of nonpriviledged telephone calls made by pretrial detainees at pretrial detention facilities, such as Rikers Island Correctional Facility (hereinafter Rikers) (*see People v Johnson*, 27 NY3d 199, 203-204 [2016]). This arrangement between the DOC and the District Attorneys' Offices presents a fundamentally unfair situation to pretrial detainees. In short, while pretrial detainees are notified that telephone calls made from institutional telephone lines may be recorded and monitored, they are not informed that the recordings of such calls may be distributed to the prosecutors handling their cases, and that information in the calls can be used against them at their criminal trials. I share Judge Pigott's concern, expressed in his concurrence in *Johnson*, that this arrangement "creates a serious potential for abuse and may undermine the constitutional rights of defendants who are financially unable to make bail. Something needs to change" (*id.* at 208 [Pigott, J., concurring]).

The current arrangement between the DOC and the District Attorneys' Offices simply adds to the well-documented disparities between defendants who can afford to make bail and are at liberty while awaiting trial, and those who cannot afford to make bail and are in pretrial detention facilities. "A defendant free on bail or on his [or her] own recognizance can . . . make good use of that liberty by consulting and participating fully with counsel in time-consuming preparations for trial, including tracking down witnesses and evidentiary leads" (*id.* at 210).

The detained suspect, however, cannot engage in such pretrial preparations. "Moreover, any telephone conversations with family members or potential witnesses are now turned over to the prosecution for it to review. Not only do prosecutors obtain critical information about key defense witnesses and possible defenses well before those materials would have been disclosed, but they can also use innocuous details to their advantage in negotiating plea deals, for example, by combing through a detainee's recorded conversations for information about his [or her] financial limitations or family obligations" (id.).

I am seriously troubled by the fact that pretrial detainees cannot speak to family members without members of the District Attorneys' Offices listening in. This is especially egregious where pretrial detainees are never informed that the recordings of such telephone calls may be turned over to the prosecution.

Assistant District Attorneys regularly seek to introduce at trial recordings of telephone calls made by pretrial detainees as affirmative evidence of their guilt, principally on the basis of consent. According to the Assistant District Attorneys, since the pretrial detainees consented to the monitoring and recording of such telephone calls, the recordings of the calls may properly be admitted into evidence. However, consent to the monitoring and recording of a telephone call does not equate to an implied consent to have the recording of the call handed over to the prosecution.

In this case, I agree with the majority that the defendant impliedly consented to the monitoring and recording of his telephone conversations by using the telephones at Rikers. As the majority notes, the defendant was informed that his telephone calls from institutional telephones at Rikers would be recorded and monitored, and that his use of those telephones constituted consent to such recording and monitoring. However, the defendant was never informed that the recordings of his telephone calls would be provided to the prosecutor handling his case. Consequently, the defendant never expressly or impliedly consented to the recordings of those calls being disseminated to the prosecutor for potential use at his criminal trial on this matter.

While the defendant admittedly "had no reason to expect privacy in his calls, that does not equate to any consent that the agents and prosecutors working on this case would gain access" to the calls (United States v Mitan, 2009 WL 3081727, *4, 2009 US Dist LEXIS 88886, *11 [ED Pa, Sept. 25, 2009, Nos. 08-760-1, 08-760-2], 499 Fed Appx 187 [3d Cir 2012]). Indeed,

there is "a major distinction between prison authorities having access to prisoners' phone calls for purposes of prison security and discipline, and the prosecutors of that pretrial prisoner having the same access for purposes of gaining advance knowledge of the pretrial prisoner's trial strategy and potential witnesses" (2009 WL 3081727, *4, 2009 US Dist LEXIS 88886, *11; *see People v Johnson*, 27 NY3d at 209 [Pigott, J., concurring]).

In my view, the defendant's consent was limited to the monitoring and recording of his telephone calls. This limited consent did not extend to the dissemination of the recordings of those calls to the prosecutor handling his case. In this context, the defendant's consent can be no broader than the notice provided to him (*cf. Watkins v L.M. Berry & Co.*, 704 F2d 577, 581 [11th Cir 1983]).

Since the defendant did not impliedly consent to the dissemination of the recordings of his telephone calls to the prosecution, the recordings of the calls were improperly admitted into evidence. This error was not harmless, as there is a significant probability that the error might have contributed to the defendant's convictions (*see People v Johnson*, 57 NY2d 969, 970 [1982]; *People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

Pretrial detainees are presumed innocent, as they have not yet been convicted of any crime. Moreover, while the DOC has a legitimate interest in maintaining the safety and security of its detention facilities, it has no legitimate interest in harvesting evidence for the prosecution (*see People v Johnson*, 27 NY3d at 208-209). Under these circumstances, it is not simply a better practice for the DOC to provide express notification to pretrial detainees that recorded telephone calls may be turned over to the prosecution; such notice is required for the proper admission of these recordings into evidence at a criminal trial.

Accordingly, I respectfully dissent, and vote to reverse the judgment and order a new trial.