People v Dixon (2024 NY Slip Op 05176)

People v Dixon

2024 NY Slip Op 05176

Decided on October 22, 2024

Court of Appeals

Troutman

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 22, 2024

No. 74 

[*1]The People & c., Respondent,
v
Kerbet Dixon, Appellant.

David Fitzmaurice, for appellant. 
Danielle S. Fenn, for respondent. 

TROUTMAN, J.

The primary issue before us is whether this pro se defendant was denied his constitutional right to present a defense by the People's monitoring of the telephone calls that he made to his trial witnesses from jail. Under the unique circumstances of this case,
we hold that defendant's constitutional right to present a defense was not violated. Because that contention and defendant's remaining contentions do not require reversal or modification, we affirm.
I.
/i>
In 2011, "A.M." and "J.H.," two children under 11 years old, accused defendant of repeatedly sexually assaulting them between 2007 and 2009, and a third complainant, "D.M.," accused defendant of raping her during that same period when she was under the age of 17. After one of the complainants disclosed that defendant had video-recorded the assaults and shown her child pornography during the course of the assaults, the police obtained a search warrant and seized defendant's home computers. Forensic examination of the computers revealed hundreds of images of child pornography and an encrypted, 10-gigabyte "TrueCrypt" container that the police were unable to access, even with the assistance of the Secret Service, FBI, and Department of Homeland Security.[FN1] The examination further [*2]revealed that Google alerts on one of the computers had been set for specific search terms eerily similar to aspects of the assaults.
Proceedings commenced in March 2012 by the filing of an indictment charging defendant with, inter alia, one count of course of sexual conduct against a child in the first degree (Penal Law § 130.75 [1] [a]) pertaining to the conduct against A.M., another
count of course of sexual conduct against a child in the first degree (see id.) pertaining to the conduct against J.H., two counts of rape in the third degree (id. § 130.25) pertaining to the conduct against D.M., and 150 counts each of promoting and possessing a sexual performance by a child (id. §§ 263.15; 263.16). Defendant posted bail and was released. After defendant unsuccessfully sought to sever the child pornography counts from the sexual assault counts pursuant to CPL 200.20, a second indictment charged him with an additional 334 counts of possessing a sexual performance by a child (Penal Law § 263.16). Upon the People's unopposed application, Supreme Court joined the second indictment for trial with the first.
The court assigned counsel, as well as a computer expert and an investigator to assist the defense. Defendant eventually became dissatisfied with his assigned counsel, as he had with two prior attorneys, and, in July 2013, the court granted defendant's request to proceed pro se and continued defense counsel's assignment in the role of a "legal advisor."
The trial commenced in late January 2014. The People's first few witnesses included A.M. and J.H, who were ages 11 and 13 at the time of trial. At one point during trial, on a Thursday, the court decided to take an extended lunch recess to give the People's next witness time to arrive from out of state. Defendant asked who that witness would be. The court asked the prosecutor if there were any concerns about witness intimidation. The prosecutor said that there were no such concerns and disclosed that the next witness would be D.M. After the recess, the court stated that D.M.'s arrival had been delayed and adjourned for the day.
On Friday morning, the prosecutor brought the court's attention to a blog posted to the internet Thursday evening from an IP address associated with the residence of defendant's sister, where defendant was living during trial. The blog made sexually disparaging comments about D.M., identified her by name as a complainant in a sex crime case, and included a picture of her in underwear. The prosecutor said that the picture was one that defendant had previously disclosed to the People. Defendant stated that he did not post the blog but knew who did. The prosecutor asked the court to remand defendant to jail, stating that the complainant was "devastated" and "in tears . . . waiting to be called to testify." The prosecutor added that defendant's actions "had the chilling effect" that defendant intended. The court concluded that defendant either posted the blog himself, or assisted the person who posted it, in violation of Civil Rights Law § 50-b. As a result, the court ordered defendant to be remanded.
On Monday morning, defendant protested that it was difficult to prepare his witnesses for trial because he was in jail with no access to his files or witnesses, and he moved for a mistrial. The court stated that defendant had the assistance of his family and his legal advisor. The prosecutor added that defendant had been afforded not only a legal advisor but an investigator and a computer expert to assist him with preparation of his defense, at public expense. The People later called as a witness the detective and computer crimes specialist who conducted the forensic examination of defendant's computers, and he testified to the existence of the encrypted, 10-gigabyte TrueCrypt container that was installed on one of the computers, among other findings. After the testimony of two more witnesses, the People rested.
Defendant's first witness was his daughter; the court gave defendant the opportunity to speak to her alone in the courtroom before she testified. It became apparent during the testimony that defendant intended to introduce in evidence a recorded conversation between his daughter and A.M., in which A.M. allegedly recanted her accusations. Although the daughter recorded the conversation two years earlier, the defense never disclosed the recording to the People, with the defendant insisting that he had just become aware of the recording himself. During voir dire, the daughter testified that she simply asked A.M. questions and told her to be honest. The daughter admitted, however, that she "had to record it a couple of times" and delete portions of it because A.M. was not answering the questions out loud at first. Though the court was "sure" that defendant was aware of the existence of the recording and that defendant's tactic was an "ambush," the court permitted the recording to be played for the jury.
On cross-examination, the People asked the daughter about a phone conversation she had with the incarcerated defendant the week before. The daughter admitted, based on the contents of that conversation, that defendant was not only familiar with TrueCrypt but also that he gave her the password for it over the phone. The daughter further testified that defendant told her to come visit him in jail so that he could "grill" her before she [*3]testified. When the People sought to refresh the daughter's recollection about further details of the call, defendant agreed to allow the call to be played outside of the jury's presence and stipulated to the contents of the call.
The People were permitted to call A.M. out of order to testify in rebuttal about the circumstances of her alleged recantation. She testified that, two years earlier (when she was nine years old) defendant's daughter drove her to Toys "R" Us to pick out toys for her Christmas list. While parked outside the store, the daughter questioned A.M. about her accusations against defendant. When A.M. gave the "[w]rong" answers, the daughter instructed A.M. to say "no" when the daughter shook her head and "yes" when the daughter nodded. A.M. testified that her statements on the recording were false and that her trial testimony was true.
The defense case proceeded, with defendant at one point protesting that it was difficult to prepare his witness with the prosecutor listening to his calls. The court stated that when defendant wanted to speak to his witnesses, the court made the prosecutors leave the courtroom. Defendant protested that he still did not have enough time to prepare. The court responded that the case had "gone on for years": "You've had years to prepare the case." Defendant asked to adjourn for the weekend so he could have more time to prepare his witnesses. The court denied the request but noted that there was only one more day of scheduled testimony before the weekend and stated that it would revisit the matter the next morning. The next day, it was agreed that defendant would testify in his own defense. Defendant called one character witness to provide brief testimony and spent the rest of the day testifying in narrative fashion.
On the morning of the last day of testimony, defendant objected to the People listening to his calls, arguing that it gave the People an "unfair advantage." The court rejected defendant's argument.
The jury found defendant guilty of only one felony sexual assault count—course of sexual conduct against a child pertaining to conduct against J.H.—but also found him guilty of all 634 child pornography counts. The jury deadlocked on the count of course of sexual conduct against a child pertaining to the A.M. and the counts of rape pertaining to D.M. At sentencing, defendant entered an Alford plea to the deadlocked counts in exchange for concurrent time and the court's promise that it would vacate the plea if the judgment were reversed on appeal.
The Appellate Division affirmed the judgment (211 AD3d 1030 [2d Dept 2022]), and a Judge of this Court granted leave to appeal (40 NY3d 933 [2023]).
II.
/i>
"Criminal defendants must be afforded 'a meaningful opportunity to present a complete defense' " (People v Deverow, 38 NY3d 157, 164 [2022], quoting Crane v Kentucky, 476 US 683, 690 [1986]). That right, which encompasses the right to offer the testimony of witnesses, is "a fundamental element of due process of law" (Washington v Texas, 388 US 14, 19 [1967]; see Deverow, 38 NY3d at 164; US Const Sixth, Fourteenth Amends). Criminal defendants also have a constitutional right to self-representation (see McKaskle v Wiggins, 465 US 168, 174 [1984]). The right to self-representation exists not only "to affirm the dignity and autonomy of the accused," but also "to allow the presentation of what may, at least occasionally, be the accused's best possible defense" (id. at 176-177; see People v Rosen, 81 NY2d 237, 245 [1993]). To that end, pro se defendants "must be allowed to control the organization and content of [their] own defense" and "must be accorded 'compulsory process for obtaining witnesses in [their] favor' " (McKaskle, 465 US at 174, quoting US Const Sixth Amend; see Rosen, 81 NY2d at 244). Thus, an incarcerated pro se defendant has a right to prepare and present a defense no less than any other defendant.
In contending that the right to present a defense was violated in this case, defendant posits that the People's "unfettered access" to recordings of jail phone calls has the potential to prejudice a pro se defendant and impair his ability to prepare and present a defense, undermining the fairness of the process (People v Johnson, 27 NY3d 199, 211 [2016, Pigott, J., concurring]). The opportunity for a lawyer to communicate confidentially with potential witnesses is essential to preparation of a defense, and the same is true for an incarcerated defendant exercising the right to self-representation. Pro se defendants who use jail telephones to prepare their witnesses and discuss trial strategies may not fully appreciate that their conversations may be divulged to the prosecution, which risks placing them at an unfair disadvantage. Even where that possibility is understood, the limited alternative options place many incarcerated pro se defendants in a difficult position: prepare over a recorded phone line or do not prepare at all (see id. at 211 [Pigott, J., concurring]).
Under the particular facts of this case, however, we conclude that defendant's right to present a defense was not impaired by the monitoring of his jail phone calls. Defendant was out on bail for nearly the entire two years between indictment and his mid-trial remand, including more than six months while representing himself, giving him ample time to prepare his witnesses. Even after remand, there is no dispute that defendant had means other than the recorded phone lines to prepare his witnesses. Indeed, the record establishes that defendant's daughter visited him in [*4]jail at his request before he called her to testify so that they could continue their trial preparations in person. The court was proactive in protecting defendant's rights,[FN2] permitting him time in the courtroom to speak to each of his witnesses in private before their testimony. In addition, when defendant asked to adjourn for the weekend to prepare his witnesses, the court stated that it would take the matter up in the morning, at which time it was agreed that defendant would testify for most of the remainder of the week. The court also noted that defendant had been assigned a legal advisor and an investigator, both of whom had the expertise and wherewithal to assist in the preparation of the defense.
Although the People's monitoring of an incarcerated pro se defendant's jail phone calls may have a chilling effect on the defendant's trial preparation that threatens the right to present a defense—particularly if the People are able to make use of the information in the calls in the pending trial—the facts here are otherwise. Defendant became aware that the People were listening to his phone conversations only after he had presented the direct testimony of his daughter and an expert. Aside from himself, the only remaining defense witnesses provided character testimony and little else that could be considered relevant to the case. Thus, any chilling effect here was negligible.
Under the circumstances of this case, we conclude that there was no violation of defendant's right to present a defense.
III.
/i>
Defendant's remaining contentions are meritless, waived, or unpreserved. Contrary to defendant's contention, the court properly denied his motion to sever the counts in the first indictment charging child pornography offenses from the counts charging sexual assault offenses. Because the offenses were properly joined pursuant to CPL 200.20 (2) (b), "the court lacked statutory authority to sever" them (People v Bongarzone, 69 NY2d 892, 895 [1987]; see CPL 200.20 [3]).
We reject defendant's further contention that the court should have denied his request to proceed pro se as equivocal. A request to go pro se is equivocal when it "does not reflect an affirmative desire for self-representation" and instead shows that "self-representation was reserved as a final, conditional resort" (Matter of Kathleen K. [Steven K.], 17 NY3d 380, 387 [2011]). To be sure, "conditioning a request for new attorneys with a request for self-representation does not necessarily make the latter request equivocal" (People v LaValle, 3 NY3d 88, 107 [2004]), but it can become equivocal where a "defendant raised the argument for self-representation as a way of obtaining the dismissal of his . . . assigned counsel" (People v Gillian, 8 NY3d 85, 88 [2006]). Here, although defendant initially made his request to proceed pro se as an alternative to his request for substitute counsel, defendant later told the court that he had spoken to his family and decided that self-representation was "the best way to go." Before conducting the requisite searching inquiry, the court invited defendant to make another argument for substitute counsel, but defendant declined to do so, explaining that he was "satisfied to go pro se." Moreover, even after granting defendant's request to proceed pro se, the court left the door open for defendant to make an argument for the appointment of a new attorney, and thereafter defendant "never said a word about wanting" one (LaValle, 3 NY3d at 107). Under these circumstances, where defendant explicitly declined the opportunity to argue for a new attorney, defendant's request was unequivocal.
Defendant next contends that the court failed to conduct a "searching inquiry" as required to apprise him of the dangers and pitfalls of self-representation inasmuch as the court failed to ensure that he was aware of the nature of the charges and range of possible sentences that may result from conviction. We reject that contention as well (see People v Blue, — NY3d — [decided Oct. &mdash, 2024]). The record and defendant's own statements indicate that he worked as a court officer for 21 years, had been involved in prior sexual abuse cases, and was aware that he risked [*5]serving the rest of his natural life in prison if convicted. Indeed, defendant mentioned twice during the searching inquiring that his "life" was at stake.
Defendant waived any challenge to the use of a recorded jail telephone call during cross-examination of his daughter because he agreed to allow the recording to be played and stipulated to its contents (see People v Santos-Sosa, 233 AD2d 833, 833 [4th Dept 1996], lv denied 89 NY2d 988 [1997]).
Defendant's remaining contentions, including his challenge to the People's introduction of an inflammatory bestiality video, are unpreserved.
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Troutman. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Halligan concur.
Decided October 22, 2024

Footnotes

Footnote 1: According to the trial testimony of the detective and computer crimes specialist who conducted the forensic examination, TrueCrypt is software that allows users to encrypt files and create containers, like folders, where encrypted files can be stored and accessed only by a person who knows the password.

Footnote 2: Though unrelated to the monitoring of the calls, we note that another of the court's rulings demonstrates that the court was mindful of defendant's right to present a defense. When defendant sought to introduce a previously undisclosed, years-old, edited recording of a complainant's ostensible recantation, the court permitted the recording to be played for the jury, a ruling consistent with the goal of protecting defendant's right to present a defense (see People v Cerda, 40 NY3d 369, 378 [2023] [concluding that exclusion of exculpatory forensic evidence violated right to present defense]; People v Spencer, 20 NY3d 954, 956 [2012] [concluding that court should have permitted defendant to present evidence in his defense of officer's motive to frame him for the crime]).